WORTMAN, RESPONDENT, *v.* KLEINSCHMIDT ET AL., APPELLANTS.

[Argued March 3, 1892.   Decided June 27, 1892.]

MECHANICS' LIEN — *Contracts* — *Liability of owner for extra work.* — The owner of a building, constructed under a written contract for its entire completion, which provides that no claim shall be made by the contractor for additional work, unless the same shall be done in pursuance of a written order from the architects, is not liable for extra work that has been done without such written order, in the absence of an agreement modifying the original contract, or an independent promise to pay therefor; and in such case it is error to instruct the jury that the contractor could recover the reasonable value of such extra work, if it was done at the request, or with the knowledge or consent, express or implied, of the owner or his agent. (DE WITT, J., dissenting, in that it appears from the evidence that there was an agreement as to the extras modifying the original contract, and an independent promise to pay for the extras.)

SAME — *Attorney's fee on foreclosure* — *Construction of Act of March 14, 1889.* — The Act of March 14, 1889 (16th Sess. p. 172), adding to section 1394, fifth division of the Compiled Statutes, a provision allowing the plaintiff to recover as costs a reasonable attorney's fee in actions "brought under the provisions of this act," is not restricted in its application to the persons enumerated in section 1394, but applies to the enforcement of all liens embraced in the chapter entitled "Liens."

SAME — *Attorney's fee* — *Constitutional law.* — Section 1394 a, fifth division of the Compiled Statutes, allowing the recovery by the plaintiff of a reasonable attorney's fee in an action to foreclose a mechanic's lien, is not unconstitutional as being repugnant to section 6, article iii. of the Constitution, providing that courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay. (DE WITT, J., dissenting.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for foreclosure of mechanics' lien, tried before HUNT, J. Plaintiff had judgment below. Modified.

*Cullen, Sanders & Shelton,* for Appellants.

I.   The plaintiff seeks to recover for extra work done and performed upon the building without showing a compliance with the terms of the contract sued upon.   The contract provides that "the contractor shall make no claim for additional work unless the same shall be done in pursuance of an order from the architects, and notice of all claims shall be made to the architects, in writing, within three days of the beginning of such work."   A contractor cannot recover for extra work, in a suit on a contract for a balance due, where the contract provides for the submission to arbitration of such claims, the plaintiff having made no offer so to submit.   (*Scammon* v. *Denio,* 72 Cal. 393.)   Inasmuch, therefore, as the plaintiff has failed to show a compliance with the terms of the contract upon which he rests as the basis of his action, he cannot recover except upon showing that he fulfilled the terms of the contract with regard to extra work.   (*Sutherland* v. *Morris,* 45 Hun, 259; *United States* v. *Ellis,* Arizona, July 3, 1887, 14 Pac. Rep. 300; *Mills* v. *Weeks,* 21 Ill. 568; *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522.)

II.   The court allowed the plaintiff $1,000 as an attorney's fee in this case.   This was wholly unauthorized, because there is no statutory provision for the allowance of an attorney's fee in Montana.   (*a*)  The act of the sixteenth legislative assembly of Montana, approved March 14, 1889, purports to be an amendment to section 1394, which is merely a section allowing liens to ranchmen, herders, and others, and has no application to the mechanics' lien law as such.   (*b*)  The law is void for the reason that if it be construed to cover mechanic's liens, it provides for a judgment against the defendant, whose property is subject to the lien.   No judgment is allowed for attorney's fees against the party with whom the claimant contracted, but it is made the duty of the court to order the owner of the property to pay an attorney's fee.   In the case of subcontractors, a judgment is rendered against the contractor for the amount of plaintiff's claim, and when the contractor pays that he satisfies the judgment.   But there is still outstanding against the owner of the property a claim for attorney's fees for which

he has no redress, and which he is obliged to pay without prospect of return. In other words, the law provides a penalty against the owners of the property, whether he defends the suit or suffers a default. The contractor may claim that he does not owe his subcontractor the money claimed. The owner of the property may make default and suffer judgment to go against him, but whether he does or not, he is compelled to pay an attorney's fee individually, and without chance of reimbursement, because his contractor defends the case. No matter what amount is involved, no matter how meritorious the defense, if the lien claimant recovers judgment for one dollar, although he may have brought suit for thousands, the owner of the property, under this statute, is liable for the attorney's fees that the court shall order to be paid. This is a law impairing the obligation of contracts. It is depriving a man of his property without due process of law, and it is depriving parties of an equal right before the courts of this State. (c) The Constitution of Montana, article iii., section 6, provides : " Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay." The provision of law with reference to attorney's fees is a provision for the sale of justice. (*Calder* v. *Bull*, 3 Dall. 386; *Durkee* v. *Jamesville*, 28 Wis. 464; 9 Am. Rep. 500; *Wilder* v. *Chicago etc. Ry. Co.* 70 Mich. 382; *Schut* v. *Chicago etc. Ry. Co.* 70 Mich. 433; *Rinear* v. *Grand Rapids & I. R. R. Co.* 70 Mich. 620.) Because a man is unfortunate enough to be the owner of property, he should not be punished for appearing before the court and defending such rights as he believes he has.

*H. G. McIntire,* and *S. H. McIntire,* for Respondent.

The appellant seeks to avoid paying for certain extras which it is alleged and shown were expressly ordered by him, and for which he specifically promised to pay, and to do this makes the remarkable plea that he and plaintiff did not proceed according to the terms of the written contract in regard to extras. The allegations and proof are conclusive that he is estopped from any such defense. The extras were not furnished under the

written contract, but on subsequent verbal agreements of the parties. That an oral agreement can be made subsequent to and modifying a written one would seem too plain to admit of argument. (Bishop on Contracts, § 812; *Kalkmann* v. *Baylis*, 17 Cal. 291; *McFadden* v. *O'Donnell*, 18 Cal. 160; Lloyd on Building Contracts, p. 196.) Especially is this so if there be a special promise, as there was in this case, to pay for the same. (*Badders* v. *Davis*, 88 Ala. 367; *Delaney* v. *Linder*, 22 Neb. 274; 2 Jones on Liens, § 1441.) In allowing a reasonable attorney's fee as costs the lower court acted in accordance with the legal duty imposed upon it by the statute. (Acts 1889, p. 172.) Counsel for appellants are mistaken in supposing this act to be an amendment of section 1394 of the Compiled Statutes. It is apparent from its terms that it was intended as an additional section to the chapter of the Compiled Statutes relating to liens. If the act in all its parts is read there will be no difficulty in ascertaining what the legislature intended by its passage, and this we understand is the paramount duty of the courts in the construction of statutes. A similar statute of California has been repeatedly upheld. (Cal. Code Civ. Proc. § 1195; *Rapp* v. *Spring Valley Gold Co.* 74 Cal. 532; *McIntyre* v. *Trautner*, 78 Cal. 449; *Clark* v. *Taylor*, 91 Cal. 552; *Harlan* v. *Stufflebeem*, 87 Cal. 508.) Statutes providing for attorneys' fees to be taxed against one party to a suit in certain cases have been repeatedly upheld. (*Peoria etc. Ry. Co.* v. *Duggan*, 109 Ill. 537; 50 Am. Rep. 619; *Kansas Pac. Ry. Co.* v. *Mower*, 16 Kan. 573.) Actions to foreclose liens are in their nature equitable, and the awarding costs is in the discretion of the court. Where the statute provides for costs, as ours does, the lien claimant is entitled to his costs as a matter of right. (2 Jones on Liens, § 1616; *Weston* v. *Olsen*, 55 Wis. 613; *George* v. *Everhart*, 57 Wis. 397.) The case of *Wilder* v. *Chicago etc. Ry. Co.* 70 Mich. 382, cited by appellants' counsel, has no application; if it had it is not good law, and was in a late case in Missouri distinguished, and the contrary view adopted. (*Perkins* v. *St. Louis etc. Ry. Co.* 103 Mo. 52.) It might as well be contended that any of the other costs in this case should be excluded as those denominated attorneys' fees. A sufficient answer to the position of appellant Kleinschmidt

is this, that if he desired to avoid the imposition of costs in this action he should have paid his honest debts.

BLAKE, C. J. — The complaint, among other things, alleges that: "And plaintiff avers that, in addition to the sum specified and mentioned in said contract, the said plaintiff, for and at the special instance and request of said defendant, Reinhold H. Kleinschmidt, performed *extra work* and furnished *extra materials,* over and above those specified in said contract, the price of which was and is the sum of . . . . $763.40, making the total price of the work done and materials furnished by said plaintiff on said buildings the sum of . . . . $57,473.40." The account which was filed by the respondent for the purpose of securing a mechanic's lien upon the property contains this statement: "That in addition thereto certain extra work and materials furnished, over and above those specified in said contract, were furnished and done by said Daniel P. Wortman on said buildings and structures, at the request of said Reinhold H. Kleinschmidt, the value of which was and is the sum . . . . $763.40." The account consists of these items, which are not set forth in the pleadings: —

| | | |
|---|---:|---:|
| To contract for building granite block................ | $56,710 | 00 |
| To extra work and sundries on same, as follows: | | |
| Sept. 12th. | | |
| To freight and transfer on glass........................ | 19 | 69 |
| To extra work on floor................................... | 72 | 00 |
| To rubblestone and carpenter work..................... | 7 | 00 |
| To extra work per special contract on first-story ceiling.................................................... | 235 | 00 |
| To setting and moving vault doors: | | |
| 640 brick.................................... $ 5 44 | | |
| Labor.......................................... 12 00 | | |
| Brick mason.................................. 21 00 | | |
| | 38 | 44 |
| To freight and transfer on 4 boxes of glass........... | 13 | 70 |
| To 55 feet cherry dado, at $3.75...................... | 206 | 25 |
| To one door and frame, with trimmings in basement | 16 | 00 |
| To plastering in basement............................... | 6 | 12 |
| To 16 feet of base........................................ | 2 | 60 |

| | | |
|---|---:|---:|
| To steps to annex second story | $ | 12 00 |
| To door in elevator shaft | | 3 00 |
| To 29 hours' work ordered by Scott, at 40c | | 11 60 |
| To electric work on elevator | | 120 00 |
| For'd | $57,473 | 40 |

The answer denies that, "in addition to the sum mentioned and specified in said contract, plaintiff, for or at the special' instance and request of defendant, R. H. Kleinschmidt, per-formed extra work, or furnished extra materials, over and above those specified in said contract, the price of which was or is the sum of $763.40, or any other sum whatever; or that the total price for the work done or materials furnished by said plaintiff on said buildings is the sum of $57,473.40, or any other sum than the sum of $56,710. And defendants aver that, if the plaintiff performed any extra work, or furnished any extra materials, as set forth in plaintiff's said complaint, he did not perform the same in accordance with the terms of his said contract set forth, and should not now be allowed to make any additional claim for work done, for the reason, as defendants are informed and believe, none of said extra work was done in pursuance of a written order from the architects, and no notice of any claim for extra work was made at any time by plaintiff to the architects in writing, within three days from the beginning of said work, as required by the contract, a copy of which is set forth in plaintiff's complaint."

The replication is as follows: Plaintiff "avers that the additional work, labor, and materials, over and above that specified in the contract, which is set out in the complaint herein, were done and furnished by plaintiff on the buildings, in said complaint mentioned, at the instance and request of defendant Kleinschmidt, as set forth in paragraph 2 of the complaint herein, and were done and furnished, and the contract therefor made, long subsequent to the execution and delivery of said first-mentioned contract, and were all ordered and accepted, used and enjoyed, by said defendant Kleinschmidt, and were for his use and benefit; and were done and furnished on his promise to pay for the same; and were all done and furnished with the full knowledge of his architects and agents; and that no demand

or intimation was made to plaintiff that he should have any written order therefor, nor was he in anywise notified to claim compensation therefor in writing, nor in any other manner; wherefore plaintiff avers that said defendant should be now barred and estopped from asserting the necessity of any written order or paper for such extra work and materials."

The contract is made a part of the complaint, and provides expressly for the payment of work of this character: "The contractor shall make no claim for additional work unless the same shall be done in pursuance of a written order from the architects, and notice of all claims shall be made to the architects in writing within three (3) days of the beginning of such work."

The case was tried upon these issues. The appellants objected to the introduction of any testimony in support of the claim for additional work or materials, upon the ground that the contractor had not complied with the plain terms of the agreement. The objection was overruled, and the jury were instructed in this language: "Upon the question of extra work you are instructed that if you believe from the evidence that Wortman did or performed any work, or furnished any materials, upon the said buildings of Kleinschmidt, extra and in addition to the work or material specified in his contract, and that said work was done and material was furnished at the request, or with the knowledge and consent, express or implied, of said Kleinschmidt or his agents, then the jury are instructed that the plaintiff is entitled to recover the reasonable value of such extra work and material from the defendant, and you should so find by your verdict."

Wortman, the respondent, testified: "By the order of Kleinschmidt and his superintendent, the architects, and from drawings made by the architects — all but one instance — the flooring in the middle room of the granite block I laid through Kleinschmidt's order, Paulsen being present, and he agreeing to pay me the sum of $72; and the cherry dado in the center room of the granite block — Kleinschmidt and Paulsen being present — Kleinschmidt agreed to pay me $3.75 a lineal foot for the cherry dado, it being five feet high. I had to send to St. Paul for that. If my memory serves me right, I had a com-

munication in writing with Kleinschmidt about the cherry dado' in the month of July."

This communication was then read:—

"HELENA, MONT., July 25, 1890.

"*R. H. Kleinschmidt*—DEAR SIR: I propose to lay Oregon floor in center room, first story of granite block, for the sum of $72; also to put cherry dado five feet high in the entrance to same for $3.75 per foot; you allowing five days' extention of time on account of dado. Respectfully submitted,

"DANIEL WORTMAN."

The respondent testified further: "Kleinschmidt instructed me to go ahead and do the work, and instructed me to go to Paulsen for a detail as to the dado. Another of the extra items was, I put a wooden formation on the first-story ceiling of the annex building. The ceiling was first plastered as per the plans and specifications, and then there was a formation put across it. . . . . The price of that ceiling was submitted to Kleinschmidt, if my memory serves me right, in the same manner that these other two were, and he accepted it, and referred me to Paulsen as to a detail. . . . . Paulsen furnished the detail, and I furnished the material, and I executed the work."

Respondent also testified that Kleinschmidt had at one time a superintendent, one Milligan, who bought some rubblestone. "In laying the center floor this Milligan and Kleinschmidt agreed that he should strip the floor, it being very crooked, and I was to lay the floor on the strips; but Milligan requested me as Kleinschmidt's superintendent, to lay those strips, and allowed me three or four or six dollars, I forget the exact amount, for that work; I think the whole thing is some eighty odd dollars." The plans were changed so that two money vaults in the annex building were constructed, "as desired by Kleinschmidt and his architects," upon the opposite side of the room from what was originally designed. The position of the closets in the basement of the annex building was changed from the northwest corner to the southwest corner, in accordance with the request of "Kleinschmidt and his superintendent." Respondent further testified: "I moved them, and in addition set a partition about six feet long and ten feet high, plastered on either side, and an additional partition of one wall, about eight feet long and eight

or nine feet high. In that partition is a door of yellow pine, a door frame, casings on both sides, and a base on either side of the partition. I also, at the order of Kleinschmidt and his superintendents, put in the elevator shaft in the basement of the granite block; a door not provided for in the plans or specifications—about two and a half or three feet wide, and three and a half or four feet high, . . . . screwed on the inside, and a frame and the casings on one side, and hung for the purpose, as represented by these parties, of more readily getting to the elevator, or the elevator machinery. That is all, I believe; that is the extras that I did." The respondent also testified that the appellants did not say anything about the requirements of the contract that extra work should be ordered in writing, when any of these accounts were presented for payment;. and that Paulsen, the architect, was present when the extra materials were contributed and the extra work was done. The respondent further testified: "There was other work omitted—a partition in the basement of the granite block, running from the north side of the granite block basement to the elevator, where it now stands. The value of that work, agreed upon by Kleinschmidt and myself, in the presence of his superintendent, Mr. Scott, was $120. The value of the electric work, omitted was $1,000. I have given the defendant credit in this action with those sums." No other evidence was offered by the respondent upon this issue.

Upon the part of Kleinschmidt, a letter was read, which was addressed to the respondent by the architects, and we quote a part which relates to the proposition concerning certain work:—

"*Mr. D. P. Wortman, Contractor*—Dear Sir: Mr. R. H. Kleinschmidt rendered us this morning three notifications received from you, and in regard to them will state as follows: . . . . Your proposition to lay Oregon floor in center room, first story of granite block, including leveling up same, for the sum of $72, without any extension of time or other consideration, is accepted by Mr. Kleinschmidt. The putting in of cherry dado five feet high, in middle entrance of center store of granite block, at $3.75 per running foot, straight measurement, and five days' extension of time for placing the same, is not

accepted, as Mr. Kleinschmidt does not want to make any other improvements which will delay the completion of the work.

"Respectfully yours,  PAULSEN AND MCCONNELL."

Kleinschmidt testified: "Question. You put all your agreements in this contract and specifications, and you have never done anything else? Answer. If I did it is in writing. I never made any other arrangements of any kind that I remember of." Mr. Paulsen testified: "With slight alterations, the building known as the 'Granite and Annex' building was put up strictly according to the contract and specifications as originally drawn. There were some alterations; those alterations were mostly agreed between the contractor and the owner. I ordered some myself. On the south part of the annex building the joists were changed — instead of 2-16 they are 4 by 8. The original plans required the joist to be sunk in the north wall of the granite building. Q. Then it was changed in that respect? A. Wortman asked me about that. The intention was to cut the joist in the stone wall, and, when we got at it, it was pretty hard to cut in the stone wall, and at the same time it is not an improvement for the wall; and so Wortman asked me if I had any objection if he would put studding on the outside of the granite block, and I consented to that, provided it would not take any extra money." The witness did not testify about any other alterations which were not within the contract.

When this testimony is compared, it will be observed that the respondent complied with the contract respecting one item, "extra work on floor," and is entitled to recover the sum of $72 therefor. The claim of $206.25 for the dado should be rejected, in the light of the letter which was sent to the respondent, stating that his proposition concerning the same was not accepted. The following items are not supported by the proof: Electric work on the elevator, $120; freight and transfer on glass, $19.69 and $13.70; steps to annex, second story, $12; and work ordered by Scott, $11.60. The other items are summarized as follows: Rubblestone and carpenter work, $7; changing location of money vaults, $38.44; changing location of closets, $24.72; work on ceiling, first story, $235; and door in elevator shaft, $3. The entire account for extra work and materials must be adjusted by the same legal rule.

The respondent testifies that this labor was done and the materials were furnished by the order of Kleinschmidt and his superintendent, and from drawings prepared by his architects. Kleinschmidt and his architects testified that the contract and specifications, with the exceptions which have been pointed out, were adhered to, and therefore there could be no extra work. There is no evidence that such work was done or the materials were furnished upon the promise of Kleinschmidt to pay therefor. Let us recur to the contract, and ascertain the extent of the undertaking of the respondent. The first article provides that "the contractor shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of Paulsen and McConnell, architects (acting as agents of said owner), all work included in the entire completion of the granite block and annex building. . . . ." The third article provides that "should any alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished, as the case may be. In case of such valuation, the contractor shall proceed with the alteration, upon the written order of the architect, and the valuation of the work added or omitted shall be referred to three (3) arbitrators. . . . ." The thirteenth article provides that "it is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be $56,710, . . . . subject to additions or deductions on account of alterations, as hereinbefore provided. . . . ." What, then, is the effect of these conditions of the contract upon this demand of respondent for payment by reason of extra work and materials? There is a lack of harmony in the authorities regarding this legal problem, and the position of respondent is evidently sustained by a number of cases. It is our duty to apply to this contract the principle which seems to be supported when tested by the reason of the law. While this instrument represents the deliberate intention of the parties, and has been entered into for their mutual benefit, it is a protection of great value to the builder, the respondent. The

owner derives the advantage of all labor which may be performed upon his premises. If this work has not been included within the terms of the agreement, the remedy of the contractor is distinctly set forth, and payment can be secured and enforced whenever the order for extras has been reduced to writing. If he pursues, any other course, he exchanges certainty for chaos.

A leading English case is that of *Russell* v. *Da Bandeira*, 13 Com. B. N. S. 149, and Lord Chief Justice Erle said: "It almost invariably happens that, in the course of the construction of a house, or ship, or other extensive work, the party for whom the work is done from time to time desires to have additions and alterations; and it is by no means an unusual thing to insert a clause providing that the employer shall not be liable for extras or additions unless there be an order in writing fixing the price, or the certificate of an architect for the work so done. In many cases the court, though satisfied that the builder, acting upon the faith of an oral request, has fairly done the work for which he seeks to be paid, has felt itself to be fettered by the express terms of the bargain the parties have entered into. We cannot yield to suggestions of hardship on the one side or the other, though I must confess that, according to my experience, the hardship has most commonly been upon the side of the employer. By the terms of this contract the £10,400 is inclusive of all charges for the ship, finished and fitted perfectly in every respect, and no charges are to be demanded for extras. But any addition or additions which may be made by an order in writing of Sir George Sartorius, as an extra or extras, are to be paid for at a price to be previously agreed upon in writing. No additions were ordered by the admiral in writing; but, during the progress of the work, orders were from time to time given, by persons who represented the Portuguese government, for additions and alterations for which, under ordinary circumstances, Mr. Scott Russell might well suppose he was to be at liberty to charge. He might have declined to comply with these requests unless they were made in writing. I feel bound to give effect to the terms of the contract, and to hold that the extras and additions supplied, not under written orders during the performance of the contract,

form part of the contract for the construction of the ship, and are not to be paid for by the defendant." Mr. Justice Byles, concurring, said: "The contractor has no right to complain if he loses the price of extras and additions which, in disregard of the stipulation he has entered into, he furnishes without getting a written authority."

The case of *Abbott* v. *Gatch,* 13 Md. 314; 71 Am. Dec. 635, is in point, and Mr. Justice Tuck, for the court, said: "In the contract there is this clause: 'No extra charges to be made unless a written agreement be made and attached to the contract.' In the progress of the work alterations were made, and portions of the mill put in, as the plaintiff contends, not embraced by the terms of the contract, without the parties availing themselves of the above provision; and one of the questions in the cause is, Can the plaintiff demand additional compensation beyond the sum stipulated for the entire work? . . . . We take the true construction to be that there was to be no charge for extra work, that is, for any work beyond that stated in the contract, no matter what it might be, whether alterations in the plan or mode of doing the work, or additions or improvements in and about the completion of the mill, unless reduced to writing and attached. It makes no difference if the extra work was ordered by the owner, provided it was on the mill. As we have said, the builder need not accede to the owner's views; he may refuse, or he may assent, under the protection afforded by this clause. If extra work be done without it, the right to additional compensation is waived. Any other interpretation of such words would make them valueless to the parties. The appellee's view, if adopted, would deny to the owner the privilege of suggesting any, the most trivial, alteration of the work, without incurring the risk of opening the whole contract. Then the written agreement would be substituted by a mere *quantum meruit* claim for the work and labor, and to be afterwards adjusted upon uncertain oral testimony. And, in many cases, his mere presence on the premises might subject him to extra charges, on the ground of acquiescence in alterations made by the builder, when it might well be supposed there was to be no additional charge, because not previously attached to the contract. . . . . We cannot distinguish this agreement from that

passed upon in the case of *Cemetery Co.* v. *Coburn,* 7 Md. 202."
In the case which is last cited the same learned justice in the
opinion said : "The appellee sues to recover compensation for
two windows, placed in the gateway by direction of the architect,
which it is said became necessary to its symmetry and beauty, in
consequence of the two chimneys having been placed in a posi-
tion different from that contemplated by the original plan.    It
is said, on the part of the appellee, that these windows were
additional work, not part of the original design, and therefore
not such an alteration as was necessary to be indorsed on the
contract.   In this we do not agree. . . . . The plaintiff must
have known that he could not make the alteration and charge
for it unless the assent of the parties was indorsed on the con-
tract.   The stipulation provides, not only that the price shall
be agreed upon beforehand and indorsed, but also that, if this
is not done, it shall be taken as an agreement to make the alter-
ation without any change in the price from the original con-
tract.   If the plaintiff, relying on the assurance of the architect,
chose to perform this work without placing it within the pro-
tection afforded to the parties by an indorsement on the contract,
he must bear the consequences."   (See, also, Lloyd on Building
Contracts, § 48, and cases cited ; *Sutherland* v. *Morris,* 45 Hun,
259 ; *Duncan* v. *Board etc. of Miami Co.* 19 Ind. 154; *Scammon*
v. *Denio,* 72 Cal. 393 ; *Hot Springs Ry. Co.* v. *Maher,* 48 Ark.
522; *Hanley* v. *Walker,* 79 Mich. 607.)

We approve the doctrines which have been laid down in the
foregoing authorities.   The contrary rule is a dangerous stand-
ard, and impairs the value, and renders uncertain every written
contract for the construction of an edifice.   There is no ambi-
guity in this agreement, which was made for the "entire com-
pletion" of the building by Wortman, for Kleinschmidt, at a
certain price.   The contractor was not required to make any
alterations, or perform any extra work, without an order in
writing from the architects.   The articles of the contract are
just and equitable to both parties, and cover every contingency
which may arise during the period of its fulfillment.   The court
erred in its instruction to the jury upon this branch of the case,
and did not give proper weight to the express provisions of the
contract.   They were not informed concerning the effect of a

waiver by Kleinschmidt of any of its articles, or the performance of such work upon his independent promise to pay therefor. These important qualifications were ignored, and the jury were instructed that, notwithstanding this obligation in writing, they could find for the respondent for the reasonable value of what was designated "extra work," if the same was done "at the request, or with the knowledge and consent, express or implied, of said Kleinschmidt or his agents." We are aware that the parties could make an oral agreement by mutual consent, and modify the original contract, but the evidence does not tend to prove that this event occurred. Under the pleadings and contract, we are of opinion that the respondent is not entitled to recover any amount for so-called "extra work," except the said sum of $72. The stipulations of the contract should be enforced, and we find that the judgment is excessive in the sum of $691.40. We are unable to understand the reasons for the omission of respondent to observe the simple provisions which insured his compensation without difficulty or litigation.

The sixteenth legislative assembly, by an act approved March 14, 1889, added to section 1394, fifth division of the Compiled Laws, the following: "Whenever, in any action or suit hereafter brought for the purpose of foreclosing a lien or liens under the provisions of this act, and judgment is therein rendered for the plaintiff or any person claiming or holding a lien upon any property, the court may order, and it is hereby made the duty of the judge thereof to order, that the defendant against whose property the lien is filed shall pay as costs a reasonable attorney fee, to be fixed and allowed by the court, and to be collected as are other costs in the action." It is maintained by Kleinschmidt that this amendment does not apply to the mechanic's lien law as a whole, but is restricted to the ranchmen, herders, and other persons who are enumerated in that section. We think its provisions embrace the chapter which is entitled "Liens."

It is insisted that the act is unconstitutional; that it impairs the obligations of contracts; that it deprives one of his property without due process of law; and that it discriminates unfairly against the owner of property upon which the lien is sought to be enforced. The Constitution of the State

ordains that "courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay." (Art. iii. § 6.) The contention of Kleinschmidt is that this requirement concerning attorneys' fees is, in substance, a provision for the sale of justice, and reliance is placed upon the following authorities: *Calder* v. *Bull*, 3 Dall. 386; *Durkee* v. *Janesville*, 28 Wis. 464; 9 Am. Rep. 500; *Wilder* v. *Chicago etc. Ry. Co.* 70 Mich. 382; *Schut* v. *Chicago etc. Ry. Co.* 70 Mich. 433; *Rinear* v. *Grand Rapids & I. R. R. Co.* 70 Mich. 620.

In *Durkee* v. *Janesville, supra*, the court held that an act of the legislature providing that no costs shall be recovered against the city of Janesville, in certain classes of actions, was void. In *Wilder* v. *Railroad Co. supra*, the court adjudged that the law allowing the plaintiff, in a suit against a railroad company to recover damages for injuries to his cow, to tax an attorney's fee of $25 as a part of his costs, was unconstitutional. To the same effect are *Schut* v. *Railway Co. supra*, and *Rinear* v. *Railroad Co. supra*. There are general observations in these cases which uphold, in some respects, the contention of appellants, but the facts make them inapplicable to this controversy. Chief Justice Sherwood, in *Schut* v. *Railway Co. supra*, said: "This section provides that until the company has fenced its right of way, as required by law, it 'shall be liable for all damages done to cattle or other animals thereon,' to be recovered by the owner thereof, 'together with an attorney's fee of $25, to be taxed as costs against the defendant,' in case of a recovery." The ground upon which the Supreme Court of Michigan annulled this statute is clearly expressed by Mr. Justice Morse in *Wilder* v. *Railway Co. supra:* "The legislature cannot make unjust distinctions between classes of suitors without violating the spirit of the Constitution. Corporations have equal rights with natural persons, as far as their privileges in the courts are concerned." These decisions were followed in *Lafferty* v. *Chicago etc. Ry. Co.* 71 Mich. 35; and *Grand Rapids Chair Co.* v. *Runnels*, 77 Mich. 104. The "Log Lien Law" was involved in the last case. Statutes embodying provisions of like character have been pronounced constitutional by the courts of Kansas, Illinois, Mis-

souri, and Iowa, and the grave objections which have been pointed out in the opinions *supra* are deemed groundless. (*Kansas Pac. Ry. Co.* v. *Mower*, 16 Kan. 573; *Peoria etc. Ry. Co.* v. *Duggan*, 109 Ill. 537; 50 Am. Rep. 619; *Perkins* v. *St. Louis etc. Ry. Co.* 103 Mo. 52; *Burlington etc. Ry. Co.* v. *Dey*, Iowa, Feb. 9, 1891, 48 N. W. Rep. 98.)

The law of this State which has been complained of operates. equally upon corporations and persons, and is not obnoxious to the criticism of the courts of Michigan and Wisconsin. The case of *Grand Rapids Chair Co.* v. *Runnels, supra*, is founded upon the same deductions which had been announced in prior decisions of that court. In *Rapp* v. *Spring Valley Gold Co.* 74 Cal. 532, the court, in an action to foreclose a mechanic's lien, said: "The attorney's fee in this kind of case is not, strictly speaking, part of the costs. If allowed by the court, it need not be placed in the memorandum of costs. But it was properly allowed for the same reason that costs were allowed, viz., that it was a necessary incident of the judgment. . . . ." In *McIntyre* v. *Trautner*, 78 Cal. 449, the court affirmed *Rapp* v. *Spring Valley Gold Co. supra*, and said: "There can be no recovery for attorney's fees unless the plaintiff succeeds in his foreclosure proceeding. The court below having found against him on the merits, the lien, which is the basis upon which the right to recover the attorney's fees must rest, is gone, and the right to such attorneys' fees must go with it." The appellants do not attack the reasonableness of the sum of $1,000 which was taxed in favor of respondent as an attorney's fee, but insist that this act is within the prohibition of the Constitution, because it punishes the owner of property who resists in good faith the payment of an unjust or illegal claim. It is shown in the case at bar that the respondent brought this action to recover the sum of $14,198.50; that the verdict was for the sum of $9,113.50; and that judgment was entered accordingly. The jury arrived at this result by deducting from the demand of respondent the sum of $5,085, which was paid by Kleinschmidt after the commencement of the action.

Kleinschmidt, by his pleadings and testimony, asserted that Wortman was not entitled to recover any amount, and that if judgment were entered against him the law would not authorize

the creation of a lien upon his property to secure its payment. If Kleinschmidt had tendered to the respondent, at the appropriate time, the sum which was due, or had confessed judgment in favor of Wortman for the foreclosure of his lien, the court would not have the power, under the statute, to tax the attorney's fee because the relief sought had been obtained without a contest. If the defendant offers at any stage of actions of this class to allow a proper judgment to be taken against him, the court would consider this fact in fixing the amount of such fee. The court found against Kleinschmidt upon these issues, and we are of opinion that the legislative assembly had the power to declare that, under these circumstances, a reasonable attorney's fee should be taxed as costs.

The court below was correct in its rulings upon the other questions which have been discussed. The respondent performed the conditions of the contract which devolved upon him; the certificate of the architects was unreasonably withheld; and the delay in the construction of the building and the annex was not caused through the fault of the builder. The respondent is entitled to a lien upon this property under the statutes to secure the payment of the sum which is due from Kleinschmidt.

It is therefore ordered and adjudged that the judgment be reduced from the sum of $9,113.50 to the sum of $8,422.10, and that, when so modified, the same be affirmed.

*Affirmed.*

HARWOOD, J., concurs.

DE WITT, J. (*treating the whole case and dissenting from the conclusions of the majority of the court upon two points only*).—The views that I entertain of this case are as follows: This action arose over a building contract, by the terms of which plaintiff was to erect for defendant Kleinschmidt a building called the "Granite Block and Annex," except some items of plumbing, elevator, etc.; but, as these exceptions are not under consideration, I may speak of the contract as one for the erection of the building. Plaintiff was the original contractor with defendant Kleinschmidt. The sum which he was to receive for erecting the building was $56,710. He claims $763.40 for extra work. He says that $43,274 has been paid, and that the

balance due is $14,198.51. Plaintiff filed a lien against the real estate for this amount. The action is for a foreclosure of the lien and judgment against defendant Kleinschmidt for the amount claimed. Verdict and judgment were for plaintiff for $9,113.50. Defendants' motion for a new trial was denied. From this order, and from the judgment, the defendants appeal.

There are many facts in this case which can be more conveniently taken up and stated as we arrive at the various points made by appellants.

I find in the record one hundred and twenty specifications of errors and insufficiencies. Appellants have argued only those which we discuss below. In this connection, the remarks of Mr. Justice Miller in *Phillips etc. Construction Co.* v. *Seymour*, 91 U. S. 646, are pertinent.

The action was upon a written contract, a copy of which is attached to the complaint. Appellants insist that the action is upon a special contract, and not upon *quantum meruit*, and that plaintiff must be held to prove his compliance with the contract. Appellants contend that compliance with the contract has not been shown in several respects. I will examine these alleged noncompliances, and will take up appellants' points in the order in which they present them, as follows:—

1. The contract provides for the services of a supervising architect. On the first of each month the contractor is to be paid eighty per cent of the value of the material provided and labor done, based on the contract price to be given on an estimate of the architect. " It being understood that the final payment shall be within thirty days after this contract is completely finished; provided, that in each of the said cases the architects shall certify in writing that all the work, upon the performance of which the payment is to become due, has been done to their satisfaction."

Plaintiff does not pretend that he obtained the architects' certificate as to the final balance due for which he now sues. He pleads that he had completed the building under his contract on February 1, 1891. He excuses the nonproduction of the architects' certificate by the following pleading, which was added to his complaint as an amendment:—

"That on, to wit, the first day of February, 1891, and at

divers times thereafter, and after the performance as aforesaid
of the work and labor, and the furnishing of the materials
as aforesaid, the plaintiff requested of Messrs. Paulsen and
McConnell, who were then and there a firm of architects,
employed by the defendant Kleinschmidt in and about the
buildings aforesaid, and who are the architects mentioned and
designated in the contract hereinbefore referred to, and which
is Exhibit A of the said lien, and requested of them that they
give him a certificate in writing, in pursuance of the terms of
said contract, of the performance by him of the work and
furnishing of the materials under said contract; but although
they well knew the performance of the aforesaid work, and of
the furnishing of the aforesaid materials, to have been fully
and completely done and performed and furnished in compliance
with the terms of said contract by plaintiff, and, as plaintiff is
informed and believes, with the intention and design of delay-
ing the collection by plaintiff of the moneys due him there-
under, and in collusion with the defendant Kleinschmidt, said
Paulsen and McConnell causelessly and perversely refused,
failed, and neglected to give him the same, although he had
repeatedly requested them so to do."

It was competent that the parties should contract that pay-
ment should be made only upon the certificate of the architects.
If the architects' certificate is not obtained, plaintiff cannot
recover, unless he show that the certificate was withheld by the
architects wrongfully.   The respondent objects that plaintiff's
pleading does not say that there was fraud by the architects in
withholding the certificate.

It is interesting to note the language of some of the decided
cases in speaking of the conduct of the architects in refus-
ing the certificate.   In *Kihlberg* v. *United States,* 97 U. S.
398, the words are "fraud and bad faith;" in *Tetz* v. *Butter-
field,* 54 Wis. 247; 41 Am. Rep. 29, they are, "grossly and
palpably perverse, oppressive, and unjust, so much so that the
inference of bad faith and dishonesty would at once arise;"
in *Hudson* v. *McCartney,* 33 Wis. 341, the language is,
"fraudulently and corruptly;" in *Bently* v. *Davidson,* 74 Wis.
420, "dishonestly and arbitrarily;" in *Doll* v. *Noble,* 116
N. Y. 230; 15 Am. St. Rep. 398, "unreasonably and in bad

faith;" in *Nolan* v. *Whitney*, 88 N. Y. 648, "unreasonably and improperly;" in *Badger* v. *Kerber*, 61 Ill. 328, "in bad faith and fraudulently;" in *Thomas* v. *Fleury*, 26 N. Y. 26, "unreasonably and in bad faith;" *Voorhis* v. *Mayor*, 46 How. Pr. 116, "fraudulently and unreasonably."

Such language as that which we have just quoted from the cases is a description of the sort of conduct by the architect which has been considered sufficient to constitute his refusal to give his certificate an excuse for the plaintiff for not producing it. In the case at bar it is observed that it is alleged that the plaintiff demanded the certificate; that the architects knew of the full performance of the work under the contract; and that the architects intended to delay plaintiff in the collection of the money due him, and, in collusion with the defendant Kleinschmidt, causelessly and perversely refused the certificate. I am of opinion that this allegation of the reason why plaintiff did not produce the certificate is sufficient, in view of the cases above cited. (See, also, *Martinsburg etc. R. R. Co.* v. *March*, 114 U. S. 549; *Bryne* v. *Sisters of Charity*, 45 N. J. L. 213; *Michaelis* v. *Wolf*, 136 Ill. 68; *Whelen* v. *Boyd*, 114 Pa. St. 228.)

It is not complained by appellants that this question was not fairly submitted to the jury by the instructions of the court. Then the only ground left to appellant is that the evidence does not support the verdict in this respect.

If the building were substantially completed under the contract, the architects had no right to withhold the certificate. Direct evidence of fraud, bad faith, and collusion, is not always obtainable or required. From the great mass of testimony, circumstances, and facts, the jury must have found, under the instruction of the court, that the architects wrongfully, as pleaded, refused the certificate. I am of opinion that in this respect the evidence is not insufficient to justify the verdict.

2. Again, it was claimed by plaintiff that the defendants accepted the building, and so released the plaintiff from the obligation of the contract to produce the architect's certificate.

But the conclusion reached upon the last point renders a discussion of this one unnecessary.

3. The plaintiff included in his complaint a claim for some extras, amounting to $763.40. The appellants cite the follow-

ing clause of the contract: "The contractor shall make no claim for additional work unless the same shall be done in pursuance of a written order from the architects, and notice of all claims shall be made to the architects, in writing, within three days of the beginning of such work."

Appellants' position is that respondent has not complied with this provision of the contract, and therefore can make no claim for payment of these extras. But the plaintiff pleads in his complaint that, at the special instance and request of defendant Kleinschmidt, he performed extra work, and furnished extra materials of the value of $763.40. The account for these extras, and the pleadings in reference to them, are set out fully in the opinion of the majority of the court. The answer does not deny that such materials were furnished and work done, or that the value was as alleged. It denies only that this was at the request of Kleinschmidt, and it sets up, as a defense against this claim for extras, that if such extras were supplied, as alleged in the complaint, it was not in accordance with the contract, in that it was not done in pursuance of a written order from the architects, and that no notice of any claim for extra work was made at any time by plaintiff to the architects, in writing. Such is the condition of the pleadings. Now as to the evidence upon this issue. The plaintiff testified that the changes and deviations that were made were sometimes at Paulsen's [the architect's] request, and sometimes at Kleinschmidt's." Kleinschmidt and Paulsen nowhere deny this statement, unless such denial be found in certain testimony of Kleinschmidt and Paulsen, which is referred to in the opinion of the majority of the court, and which testimony, if I understand correctly, is interpreted by that opinion to be a denial by Kleinschmidt and Paulsen that extra work was done and materials furnished on Kleinschmidt's request, or on his promise to pay therefor. This particular portion of the testimony of Kleinschmidt and Paulsen I shall specifically treat later on in this paragraph, and until I arrive thereat, let it be understood, to avoid repetition, that when I remark, as I shall have frequent occasion to do, that certain evidence of plaintiff is not denied by Kleinschmidt or Paulsen, I mean that it is not denied except as it may be so construed to be, in the particular language of Kleinschmidt

and Paulsen, which I will discuss later, and which, as I shall endeavor to show, does not seem to me to be a denial.

We find the witness Paulsen says: "There were some alterations. Those alterations were mostly agreed between the contractor and the owner. I ordered some myself." Again, plaintiff testified as to the extras, that it was "by the order of Kleinschmidt and his superintendent, the architects, and from drawings made by the architects—all but one instance." Of that one instance I shall speak below. In the forty-three printed pages of Kleinschmidt's testimony he does not deny this, and in the twenty-nine pages of Paulsen's testimony he finds no occasion to deny it.

The plaintiff says that the architect was present when he furnished the extra work and material, and that the architect made the details for the work. The architect Paulsen does not deny this. Such is the evidence as to the extras generally. It is admitted that they were furnished. The value is not denied by the answer. There is testimony that they were done at the request of Kleinschmidt, and the architects furnished the details, and this testimony is uncontroverted. In one portion of his testimony plaintiff says that Kleinschmidt said that he "desired these extras to go until the building was completed, and then he would pay them." But it is fair to observe that it does not specifically appear, in this connection, to how many of the extras Kleinschmidt referred.

But as to most of the items of the extras, there is specific evidence.

As to the extra work on the floor, $72, plaintiff testifies that the floor was laid in pursuance to a contract between Kleinschmidt and himself, and that Kleinschmidt agreed to pay him $72 therefor. Kleinschmidt does not deny this.

As to the rubblestone and carpenter work, $7, plaintiff says that this was at the request of Kleinschmidt's superintendent. No one denies this testimony.

As to the special contract on the first story ceiling, $235, plaintiff says that the price was submitted to Kleinschmidt, and that he accepted it, and referred plaintiff to Paulsen, and that Paulsen furnished the detail, and that plaintiff furnished the material and work. Kleinschmidt nor Paulsen do not deny this.

As to the moving of the vault doors, material, and labor, $38.44, plaintiff testified that "the doors were set as represented on the plans, and they were ordered changed by Kleinschmidt, Paulsen and Mr. Scott." This was not a matter of changing the doors from a place as indicated in the plans to a new place afterwards selected, but the change was made after the doors were set. It involved pulling down work done in one place, and putting it up in another. It would seem as if this were a matter of extra expense, and so with all the extra items. They were for new work, not for changes made in plans before any construction was done on the original plan. If the latter had been the case, there might be an opportunity, as it seems to me, for another view.

As to the 55 feet of dado, at $3.75 per foot, $206.25, plaintiff says that this was "put up by his [Kleinschmidt's] request, and allowed as extra work by him." Plaintiff wrote a letter July 25, 1890, to Kleinschmidt, offering to do this dado. That letter is quoted in the majority opinion. Plaintiff testifies that "Kleinschmidt instructed me to go ahead and do the work, and to go to Paulsen for a detail as to the dado." All this Kleinschmidt admits to be true by virtue of his not denying it in his testimony. At the close of Paulsen's testimony, he identified a letter as one he had written to plaintiff. It was introduced in evidence, but for what purpose was not stated by any one. The letter treats of several topics, not here of interest, and then concludes with these words: "The putting in of cherry dado 5 feet high, in middle entrance of center store of granite block, at $3.75 per running foot, straight measurement, and five days' extention of time for placing the same, is not accepted, as Mr. Kleinschmidt does not want to make any other improvements which will delay the completion of the building." There is no date to this letter. It does not appear when it was written. Now, plaintiff testifies, and Kleinschmidt admits, that the dado was put in at Kleinschmidt's order, and neither Kleinschmidt nor Paulsen offer a word of testimony as to the Paulsen letter. They do not show, nor does it appear, that the letter was written after Kleinschmidt ordered the dado, so that it could be construed as countermanding Kleinschmidt's order. The most that can be gotten out of the letter is that there was a conflict between

Kleinschmidt's orders and those of his architect. In the absence of any testimony by Kleinschmidt or Paulsen that the Paulsen letter was written subsequently to Kleinschmidt's order to put the dado on, and so construable as a revocation of that order, it seems to me fairly clear that the final agreement was that the dado should go on. Otherwise it must be believed that plaintiff did the somewhat unusual act of wilfully building the dado against express orders not to do so, and then expected to recover for his services. Such is not the ordinary conduct of men. It occurs to me that the natural conclusion is that plaintiff's testimony and Kleinschmidt's admissions were true; and that, as a matter of fact, Paulsen's letter, in regard to which he and Kleinschmidt have not a word to say, does not represent the final conclusion of the parties upon the subject. Whether this view be correct or not, the jury so found by virtue of their general verdict, and the evidence certainly supports this finding.

What has been said of the items specifically reviewed is also true as to the basement, $16; plastering, $6.12; base, $2.60; door in shaft, $3, and electric work on elevator, $120. There is specific evidence as to the ordering of these items by Kleinschmidt—evidence that is not controverted by testimony on the part of defendant.

There are three items of extras, freight, and transfer on glass, $19.69, do. $13.70, and steps to annex second story, $12, and perhaps the item of twenty-nine hours' work ordered by Scott, $11.60, in regard to which there is not such specific evidence as I note in respect to the other items. But, as observed, plaintiff testified, as to the extras generally, that they were at the order of Kleinschmidt and Paulsen; and as this statement went unchallenged, and the jury found, with this uncontroverted testimony, I see no reason to disturb the verdict.

As I have noted above, when I have observed that the testimony of plaintiff, which I have reviewed, was uncontroverted, I have spoken independently of certain evidence by Kleinschmidt and Paulsen, to which I will now give my attention, and which I do not understand is, in fact, a denial of plaintiff's testimony in the matter that I have been considering; that is, his testimony as to Kleinschmidt's ordering and promising to pay for the extras.

This testimony of Kleinschmidt is quoted in the majority·
opinion of the court, as follows: "Question. You put all your
agreements in this contract and specifications, and you have
never done anything else? Answer. If I did, it is in writing;
I never made other arrangements of any kind that I remember
of." Was this evidence intended by Kleinschmidt, and under-
stood by any one, as a denial that he had ordered or promised
to pay for the extras? To understand this matter, it seems to
me fairly reasonable that we should notice the context of his
testimony, and the subject in regard to which Kleinschmidt was
speaking. The remarks of Kleinschmidt, above quoted, were
made on cross-examination, and are found on the sixth page of
the cross-examination as transcribed. Prior to this point in his
testimony he had not once referred to extras. In his cross-
examination up to this point he had spoken of a financial
arrangement with the Bohn Manufacturing Company. He
then spoke of some plastering done by Moran and Lyden, for
which they had filed a lien. He then speaks of plaintiff haul-
ing away some temporary roofing, and then comes to a matter
of doors, and testifies as follows: "The reason the doors do not
work satisfactorily in that building is because they have shrunk
a good deal, and they do not fit properly in the casings, so that
the locks will not lock. I think that is the only reason why
they do not work satisfactorily." Then comes this question:
"As a matter of fact, have you not an arrangement with Wort-
man (the plaintiff) and the Bohn Manufacturing Company
that they are to make good all those defects of that kind, and
that you are not to pay them until they do?" Then the witness
answered as above quoted: "There is no other arrangement
except the contract and the specifications. I never made any
further arrangement that I remember of except the contract
and specifications. Question. You put all your agreements
in this contract and specifications, and you have never done
anything else? Answer. If I did, it is in writing; I never
made any other arrangement of any kind that I remember of."
The witness then goes on to speak of a leak from an overflow
pipe. He then speaks of the elevator, and of other matters in
no way connected with the question of extras.

I cannot satisfy my mind that it appears that in his testi-

mony Kleinschmidt was referring to extras at all. Plaintiff had testified specifically and in detail about the extras. Kleinschmidt does not follow him into these details, but, when testifying upon another subject, simply remarks that if he had done anything else, or made any other arrangement of any kind, it was in writing. When the witness spoke of "any other arrangement," it seems to me he must have meant arrangements such as he was talking about, and what he was talking about was that he had not any arrangement with Wortman, or the Bohn Manufacturing Company, that they were to make good certain defects before they were to be paid. These alleged defects referred to I do not understand to have anything to do with the account for extras.

To detach a few lines of Kleinschmidt's testimony from the subject-matter with which that testimony was dealing, and to attach those lines to a subject other than that which the evidence shows was within the contemplation of the witness at the time, does not seem to me to be a wholly reasonable construction of the witness' evidence.

Regarding this matter as I feel compelled to do, I am of opinion that Kleinschmidt nowhere denied any of plaintiff's testimony as to his (Kleinschmidt's) ordering the extras and promising to pay for them.

Now, as to what may be construed as to any denial by Paulsen of plaintiff's testimony. Paulsen says nothing in answer to plaintiff's detailed and specific evidence as to the extras. During his whole direct testimony he does not touch the subject. In the opening of his cross-examination he made the remark quoted in the opinion of the majority. But he says: "There were some alterations. These alterations were mostly agreed between the contractors and the owner. I ordered some myself." It is true that the witness then went on and referred to some changes in regard to which there was no controversy, but taking his whole testimony as it stands, I am of opinion that it can scarcely be construed as a denial of the particular testimony that plaintiff gave upon the subject under consideration. I cannot satisfy myself that either Kleinschmidt or Paulsen intended to, or did, deny the evidence of plaintiff on this point. But, if I am wrong in my inter-

pretation of the evidence, the most, as I can understand the matter, that can be said, is that the contradiction of plaintiff by defendant and Paulsen is not at all substantial or convincing. The most favorable view that could be taken for the defendants is that there would be simply a conflict of the evidence — a conflict which the verdict of the jury resolved, a verdict which the District Court declined to set aside. Admitting for the moment that which I do not think the record requires me to concede — that is, that there was a substantial conflict in the evidence upon the point under consideration — still I cannot conclude that the case would fall under the doctrine of *Mattock* v. *Goughnour*, 11 Mont. 265, that, after the denial of a new trial by the District Court, this court can find that the testimony of plaintiff is so improbable and unreasonable that it must be denied belief.

Holding these views, of which I cannot divest myself, I must take it as the facts of the case that the extras were furnished; that defendant received them; that he ordered them; that their value is conceded. If my view of the facts is correct, the application of the law does not seem to be difficult. It occurs to me that it is simply this: The parties first contracted that, if extras were furnished, it should be done with certain written formalities. Then they afterwards contracted that the extras should be furnished without the observation of these formalities. They agreed to one thing on one day, and to another different thing on another subsequent day. I understand that parties may do this. (See *Delaney* v. *Linder*, 22 Neb. 274; *Badders* v. *Davis*, 88 Ala. 367; *McFadden* v. *O'Donnell*, 18 Cal. 160.) Parties may do this even if their second agreement is a modification of the first. I apprehend that this view of the law is not questionable.

I do not understand that the authorities cited by the majority of the court conflict with this view. In the case of *Russell* v. *Da Bandeira*, 13 Com. B. N. S. 149, the contract was with the defendant Bandeira. The contract also was that if extras were furnished they should be upon the order of Sir George Sartorius. When the case came up for a decision, it appeared that the extras had been ordered, neither by the defendant, the party to the contract, nor by the person whom it was agreed

should have authority to order them. They were ordered by some other persons. It occurs to me that the case is thus distinguished in its facts from the case at bar.

The case of *Abbott* v. *Gatch*, 13 Md. 314; 71 Am. Dec. 635, is also cited by the majority of the court, but the opinion in that case also uses the following language: "And if, in a case like this, one party omits to have the changes reduced to writing, they must, in view of the rights of the other, be deemed to have been made with reference to the contract price, *unless there be proof of an express waiver of that clause of the contract, or a promise to pay for the extra work.*" Now, it occurs to me that the Maryland court would have distinguished the case at bar as being one in which there was "a promise to pay for the extra work." In the opinion of the majority there is also a quotation from *Cemetery Co.* v. *Coburn*, but that opinion goes on to say, on page 207: "There is nothing to show the assent of defendants, or their acquiescence in the alteration; on the contrary, the first we hear of them in reference to it is their refusal to pay the extra charge." It seems to me that this case is thus distinguished from the one at bar.

The same distinction may be found in Lloyd on Building Contracts, section 48. The case of *Sutherland* v. *Morris*, 45 Hun, 259, is also distinguishable, for the opinion observes: "And they [the contractors] *were never requested to do anything more than to complete what they undertook, in conformity with their contract.*" It is observed that in this New York case there was *no request* to do any extras.

I find the same distinction in *Duncan* v. *Board of Commrs.* 19 Ind. 154, in which the opinion remarks: "But the contractor could not, *without the consent of the board*, put extra expense," etc. I think that an inspection of *Scammon* v. *Denio*, 72 Cal. 393; *Hot Springs Ry. Co.* v. *Maher*, 48 Ark. 522; and *Hanley* v. *Walker*, 79 Mich. 607, will demonstrate that these cases are not in conflict with the view that I venture to hold.

I am of opinion that the judgment of the lower court should not be modified in the matter of extras.

4. Appellants contend that, by the statute of this State, a contractor, as such, has not a lien; that persons performing labor and furnishing material have a lien; and that, if a con-

tractor performs labor and furnishes material, he has a lien in that capacity; but that a contractor agreeing to put up a building for a given price has not, as a contractor, a lien upon the real estate in the amount of such price for performing that contract.

*Merrigan* v. *English*, 9 Mont. 113, decided that a subcontractor had a lien. Whether a contractor had a lien was not a point in that case. The opinion in that case took it for granted that a contractor had a lien, and spoke of such lien as a matter of course, and then went on to decide that a subcontractor also had a lien.

I do not deem it necessary to review the cases cited by the appellants, or make any extended argument leading to the conclusion which I hold, for I am of opinion that the matter is settled by the statute.

It is provided in the Compiled Statutes, section 1370, as follows: " Every mechanic, builder, lumberman, artisan, workman, laborer, or other person or persons," etc., " that shall do or perform any work and labor upon, or furnish any material, machinery, or fixture for, any building, erection," etc., " upon complying with the provisions of this chapter shall have for his work or labor done, or material, machinery, or fixtures furnished, a lien upon such building, erection," etc., " to secure the payment of such work or labor done, or material, machinery, or fixtures furnished."

A " contractor" is defined in Phillips on Mechanics' Liens, section 40, as follows: " He who agrees to do anything for another is a contractor. The words ' owner ' and ' contractor ' denote two persons. A ' contractor ' is he who makes a contract with the owner. The latter is generally used in the mechanic's lien law as a correlative of the ' contractor,' and means a person who employs a contractor, and for whom the work is done under the contract."

Our statute gives the lien to, among other persons, a "builder." A " builder" is defined in the Century Dictionary as follows: " One who builds, or whose occupation is that of building; specifically, one who controls or directs the work of construction in any capacity. In the practice of civil architecture, the builder comes between the architect who designs the work and

the artisans who execute it. (Eng. Encycl.)" Webster's Dictionary is to the same effect. The definition of the word "builder" in Anderson's Dictionary of Law is, "A person whose business it is to construct buildings, etc., . . . . by contract." Taking the definitions, both literary and legal, it is plain that, in reference to a building and the law of building, a "builder" is practically, in effect, a "contractor."

Again, I find section 1391 of the Compiled Statutes as follows: "All persons furnishing things, or doing work, as provided for by this chapter, shall be considered subcontractors, except such as have therefor contracts directly with the owner or proprietor, his agent or trustee." This section distinguishes, by definition, a "subcontractor" from a "contractor." If a contractor were not intended to be included among the persons whom the statute gives a lien, why should this distinction be drawn between the contractor and the subcontractor? The whole statute makes it apparent to my mind that the intention of the lien law is to give the lien to the contractor in his capacity as a contractor.

5. The lien law provides in section 1372 as follows: "It shall be the duty of every person, and all persons, except as has been provided for subcontractors, who wish to avail himself or themselves of the benefits of this chapter, to file with the recorder of the county in which the building, erection, bridge, canal, ditch, mining claim, quartz lode, ranch, city or town lots, or other improvements upon lands to be charged with lien, is situated, and within ninety days after the things aforesaid have been furnished, or the work or labor done or performed, a just and true account of the amount due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, and verified by affidavit."

The appellants object to the validity of the lien claimed by plaintiff, that the contractor did not file "a just and true account;" that the notice of lien should have set out the items of material furnished and labor done. The account as filed showed no reference to the contract, but one item, which was as follows: "To contract for building granite block, $56,710." It then sets out the extras, but these I have discussed hereinbefore. It then gives credit for payments made, and claims the

balance for which the action is brought.   The point here is whether setting down the item " to contract for building granite block, \$56,710," was filing "a just and true account."   The disposition which I have made of the last point discussed about disposes of this one as well.   Appellants' argument upon this point is based largely upon their position that a general contractor has not a lien.   As I have determined that he has such a lien, he had no other account to file, except the statement of his contract and its price.   The prices and amounts of the items of material and labor were of no interest to the owner if the contract had been fulfilled according to plans and specifications. The owner was not to pay for any number of days' labor or any number of dollars' worth of material.   It was of no consequence to him how many days' labor went into the building, or how much value in material.   The owner had but one item to pay, viz., the contract price.   The value of the whole amount of labor and material was settled by contract between the parties in advance of construction.   It was contracted to be \$56,710. The contractor had no claim for the actual value of labor and material.   Suppose that the labor and material had actually cost the contractor \$60,000 instead of \$56,710, or less, would the owner contend that a lien would be good for such actual value of \$60,000, so in excess of the contract price of \$56,710? But, if his theory is correct, that is the result which he would reach.   The fact is that, as between contractor and owner, there were no items, that is, only one item, and that item was \$56,710 for the whole contract.   (See Phillips on Mechanics' Liens, §§ 352, 353.)

6.  The above views also dispose of the objection that the lien includes the services of the contractor in superintending his own workmen.   There is in fact no claim for superintending workmen. To be sure, the contractor may have been obliged to superintend his workmen.   But that is not an item of the lien, as we regard it.   As above remarked, there was but one item, i. e., \$56,710, for erecting the building, and if in fulfilling this contract it was necessary for the contractor to superintend his workmen that cannot vitiate the lien.   In completing that one item, i. e., the building, the contractor had the right to do that which was necessary to so complete the building and his contract.

7. These remarks also apply to appellants' contention that the lien contains items of cartage, erecting scaffolding, and removing *debris*, and that these items are not subjects of lien. The contract provides that the contractor shall cart certain things, erect scaffolding, and remove *debris*. The appellants refine this matter to the point that the contractor is claiming a lien for freight. That there is not a mechanic's lien for freight goes without saying. But freight, as such, is not the claim in this lien. To complete the building, scaffolding, removing *debris*, and moving material, were naturally necessary. The contractor agreed to do these things as part of completing the building. He probably also, impliedly, took upon himself the burden and expense of sharpening his tools and feeding himself. But these were not items of lien any more than the others. Let it be remembered that cartage, removing *debris*, and scaffolding are not claimed as items. To return to the original position, there was only one item, i. e., the erecting of the building for a given price. These other matters are simply the necessary elements of that one item. For that the lien is claimed, and, I am of opinion, legally.

8. Again, it is contended that the filing of the lien was premature, appellants relying upon a clause of the contract as follows: "It being understood that the final payment shall be made within thirty days after this contract is completely finished." The lien was filed on March 6th. Appellants claim that on March 6th thirty days had not elapsed since the completion of the building, if it were completed at all. The jury found that the building was substantially completed before the lien was filed. This finding I have declined to disturb, so now it is a fact in the case.

The statute provides that a person wishing to avail himself of the lien law shall file his account within a given period after he has furnished the material and performed the labor. Thus a limitation of time is provided within which the lienor may file his lien. If the contract provides that payment shall be deferred for a certain period after the contract is completed, this would not extend the time in which to file the lien, for the statute specifically limits the time in which it must be filed, and that limitation commences to run from the time the material is

furnished and labor done, and has no reference to the time when it is agreed that payment shall be made. Therefore, the filing in this case is not premature, being made after material was furnished and labor done. Otherwise if the time of payment were, by the terms of the contract, deferred for a period longer than the period within which the lien might be filed, such a provision of the contract, as to payment, would deprive the contractor of his lien. To hold that it was the intention of a contract, by such provisions, to deprive the lienor of his lien, I should feel obliged to find such intent clearly expressed.

9. Appellants object that plaintiff had filed two liens. It would seem that, prior to filing the lien upon which the action was brought, plaintiff had filed a lien which he had considered defective, and then filed the lien under consideration. He never relied upon the old lien. It was abandoned. It was for the same subject-matter as the one at bar. A foreclosure of the present lien is a bar to an action on the former. No reason is advanced why the filing of the first lien vitiated the one upon which the action is brought. The authorities cited by appellants (Jones on Liens, § 1394, and *Cox* v. *Western Pac. R. R. Co.* 44 Cal. 18) are not in point. Phillips on Mechanics' Liens, § 335, and *Sarles* v. *Sharlow*, 5 Dak. 100, are in point.

10. Appellants claim that the lien was void because it was filed for an amount in excess of that actually due. But the statute provides, in section 1371: "But any error or mistake in said account or description shall not affect the validity of said lien, provided the property may be identified by said description." It does not appear that an excessive amount was claimed voluntarily or fraudulently, and the lien was therefore not disturbed. (2 Jones on Liens, §§ 1408, 1413–1415; *Nolan* v. *Lovelock,* 1 Mont. 224; *Mason* v. *Germaine*, 1 Mont. 263; *Black* v. *Appolonio*, 1 Mont. 342.)

11. Again, it is objected by appellants that the complaint does not show that the county recorder indorsed upon the lien the date of filing, and made an abstract as provided in section 1373 of the Compiled Statutes. If this were true, it is an omission of duty by the county recorder, and not by the plaintiff. Appellants cite no authorities to the effect that such omission by the recorder worked the penalty upon the lienor of

losing his lien. The contrary view was held in *Smith* v. *Headley*, 33 Minn. 384.

12. The court allowed to plaintiff an attorney's fee of $1,000. This was in pursuance to an act of the legislative assembly of March 14, 1889, as follows: "That there be added to section 1394 of the fifth division of the Compiled Laws of Montana, the following: Whenever any action or suit is hereafter brought for the purpose of foreclosing a lien or liens under the provisions of this act, and judgment is therein rendered for the plaintiff, or any person claiming or holding a lien upon any property, the court may order, and it is hereby made the duty of the judge thereof to order, that the defendant against whose property the lien is filed shall pay as costs a reasonable attorney's fee, to be fixed and allowed by the court, and to be collected as are other costs in the action." (§ 1394 *a*.) The appellants contend that this act of the legislature is void.

Some States have enacted laws for the allowance of an attorney's fee to the plaintiff in an action against a railroad company for the killing of domestic animals. Such law was declared to be unconstitutional in the State of Michigan. (See *Wilder* v. *Chicago etc. Ry. Co.* 70 Mich. 382; *Schut* v. *Chicago etc. Ry. Co.* 70 Mich. 433; *Rinear* v. *Grand Rapids & I. R. R. Co.* 70 Mich. 620.) But laws of this nature were held to be constitutional in *Peoria etc. Ry. Co.* v. *Duggan,* 109 Ill. 537; 50 Am. Rep. 619; *Kansas Pac. Ry. Co.* v. *Mower,* 16 Kan. 573; *Perkins* v. *St. Louis etc. Ry. Co.* 103 Mo. 52; *Burlington etc. Ry. Co.* v. *Dey,* Iowa, Feb. 9, 1891, 48 N. W. Rep. 98. But in these cases the law was sustained on the ground that the attorney's fee so taxed was in the nature of a penalty against the railroad company for the disobedience of the provisions of the statute requiring them to maintain a fence on their right of way. But the allowance of an attorney's fee in the action to foreclose a mechanic's lien is not a penalty for the disregard of a statute, and the cases last cited are not in point. The argument of respondent that "sufficient answer to the position of appellant Kleinschmidt is this: that if he desired to avoid the imposition of costs in this action he should have paid his honest debts," seems to me to be of the nature of *petitio principii*, because the very question in litigation is whether the defendant owes the debt at all.

The law before us not being sustainable as providing a penalty for the disregard of a statute of the State, as in the cases above cited, we have simply the inquiry as to whether the discrimination thus given by the statute in favor of the plaintiff and against defendant in the foreclosure of a mechanic's lien is constitutional.    The Constitution provides in section 6, article III.: "Courts of justice shall be open to every person and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay."

The Constitution of Wisconsin provides (§ 9, art. i.): "Every person shall have a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformable to the laws."    Chief Justice Dixon, of the Supreme Court of that State, said in *Durkee* v. *City of Janesville*, 28 Wis. 471; 9 Am. Rep. 500: "I had occasion to express my views of the proper construction and effect of this section in *Phelps* v. *Rooney*, 12 Wis. 705, 706. It is obvious there can be no certain remedy in the laws where the legislature may prescribe one rule for one suitor or class of suitors in the courts, and another for all others under like circumstances, or may discriminate between parties to the same suit, giving one a most unjust pecuniary advantage over the other.    Parties thus discriminated against would not obtain justice freely and without being obliged to purchase it.    To the extent of such discrimination they would be obliged to buy justice and pay for it, thus making it a matter of purchase to those who could afford to pay, contrary to the letter and spirit of this provision.    Certainty of remedy implies uniformity of remedy and equality of rights and privileges in all things respecting it, which can only be obtained by general laws, equally binding upon every member of the community.    The language denotes that there can be but one remedy for all similar cases, which must operate upon all persons or parties alike, and be equally free and favorable to all."    (See the review of authorities in this opinion.)

In *Wilder* v. *Chicago etc. Ry. Co.* 70 Mich. 384, the opinion says: "But the imposing of the attorney's fee of $25 as costs cannot be upheld. The legislature cannot make unjust distinctions between classes of suitors without violating the spirit of the Constitution. Corporations have equal rights with natural persons, as far as their privileges in the courts are concerned. They can sue and defend in all courts the same as natural persons, and the law must be administered as to them with the same equality and justice which it bestows upon every suitor, and without which the machinery of the law becomes the engine of tyranny. This statute proposes to punish a railroad company for defending a suit brought against it, with a penalty of $25, if it fails to successfully maintain its defense. The individual sues for the loss of his cow, and if it is shown that such loss was occasioned by his own neglect, and through no fault of the company, and he thereby loses his suit, the railroad can recover only the ordinary statutory costs of $10 in justice's court, but, if he succeeds because of the negligence of the company, the plaintiff is permitted to tax the $10, and an additional penalty of $25; for it is nothing more or less than a penalty. Calling it an 'attorney's fee' does not change its real nature or effect. It is a punishment to the company, and a reward to the plaintiff, and an incentive to litigation on his part. This inequality and injustice cannot be sustained upon any principle known to the law. It is repugnant to our form of government, and out of harmony with the genius of our free institutions. The legislature cannot give to any one party in litigation such privileges as will arm him with special and important pecuniary advantages over his antagonist. The genius, the nature, and the spirit of our State government amount to a prohibition of such acts of legislation, and the general principles of law and reason forbid them. (*Durkee* v. *City of Janesville*, 28 Wis. 464, 468; 9 Am. Rep. 500; *Calder* v. *Bull*, 3 Dall. 386, 388.) Here the legislature has granted special advantages to one class, at the expense and to the detriment of another, and has undertaken to make the courts themselves the active agents in this injustice, and to force them to impose penalties in the disguise of costs upon railroad companies for simply exercising, in certain cases, the common right of every person to make a

defense in the courts when suits are brought against them."
(See, also, *Grand Rapids Chair Co.* v. *Runnels*, 77 Mich. 104.)

Leaving out of consideration in the Michigan cases, as there
is out of consideration in the case at bar, the question of the
attorney's fee being a penalty for the disobedience of the
requirements of a statute, I cite those cases for their reasoning
upon the general principle.

Our statute (Act March 14, 1889) does just that which is
criticised in such unsparing language in the Michigan and
Wisconsin cases. It gives a weapon, and a powerful one, to
the plaintiff, which it withholds from the defendant. If
plaintiff is successful, he obtains his attorney's fee. If defend-
ant is victorious, he does not. The parties are not equal before
the law. Defendant must buy his right to defend by submit-
ting to the laibility of paying plaintiff's attorneys' fees. The
attorney's fee is not like the costs of the case. If defendant
prevailed, he could recover his costs of the action against
plaintiff, but he could not recover the attorney's fee, as could
plaintiff, under the statute. The statute absolutely takes from
defendant, and gives to plaintiff, that which defendant could
never recover from plaintiff if the result of the action were
favorable to defendant. When the Constitution says: "Courts
of justice shall be open to every person, and a speedy remedy
afforded for every injury of person, property, or character, and
that right and justice shall be administered without sale, denial,
or delay," these words are not vain declamation. Courts of
justice are not equally open to every person, if the defendant,
in every lawsuit of a certain character, must come into court
knowing that his adversary, if victorious, may throw a heavy
burden upon him, and that he cannot, if successful, cast a similar
burden upon his opponent.

It is true that these attorney fees have been sustained by the
Supreme Court of California in cases which respondent has
cited and in many others. But, in the cases which I have
examined, the constitutionality of the law has not been discussed
or called to the attention of the court, and I am not aware that
such constitutionality has been sustained by that court upon
consideration. But under the provisions of our Constitution,
and the matter being directly presented for determination, I

am of opinion that the Act of March 14, 1889, is unconstitutional and void, as above indicated.

I am of opinion that the judgment should be modified by striking out the attorney's fee, and, as so modified, should be affirmed.

*Affirmed.*