# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## APRIL TERM, 1908.

[No. 1715.]

PYRAMID LAND AND STOCK COMPANY, A CORPORA-
TION, RESPONDENT, *v.* GEORGE PIERCE AND I. N.
BAKELESS, APPELLANTS.

1. TRESPASS—FEEDING ANIMALS—ACTIONS FOR DAMAGES—EXCESSIVE DAM-
AGES. In an action for damages resulting from defendants' sheep graz-
ing over about three hundred and sixty acres of plaintiff's land in
February, 1906, where it appeared that plaintiff's cattle were on the
land in March, and his sheep lambed and fed there in April, and that
the feed was as good as usual ninety days after the trespass, a verdict
for six hundred dollars was excessive.

2. SAME—STATUTORY PROVISIONS. Section 1 of the act of February 18, 1893
(Stats. 1893, p. 30, c. 31), provides that it shall be unlawful for any
person to herd or graze live stock on the land of another without his
consent. Section 2 provides that such live stock shall be liable for all
damage done while being so herded or grazed, together with costs and
reasonable fees, and gives the owner of the land a lien on the stock to
secure any judgment recovered for the damage done. Section 4 repeals
an act to prevent trespass upon real estate by live stock and other
matters relating thereto approved March 15, 1889 (Stats. 1889, p. 129,
c. 120). Stats. 1903, p. 47, c. 28, prohibits herding sheep on the land
of another or within one mile of a *bona fide* home or ranch house.
Section 2 makes the owner of the sheep or his agent liable for any
resulting damages. It contains no repealing clause, and makes no
provision for attorney's fees or lien. *Held*, that Stats. 1903, p. 47, c. 28,
did not repeal the act of February 18, 1893 (Stats. 1893, p. 30, c. 31), by
implication.

3. SAME. The clause of the act of February 18, 1893 (Stats. 1893, p. 30, c. 31),
providing for an attorney's fee in favor of the party recovering dam-
ages against one unlawfully herding or grazing stock on his land is a
proper police regulation and is constitutional.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County.

Action by the Pyramid Land and Stock Company, a corporation, against George Pierce, and others. From a judgment for plaintiff, defendants appeal. **Modified and affirmed.**

The facts sufficiently appear in the opinion.

*James T. Boyd* and *A. N. Salisbury*, for Appellants:

I. The act of 1893 is general; the act of 1903 is special, and relates to sheep only. The latter act does not allow attorney's fees, but gives penal damage for repeated trespass and further forbids sheep from being herded or grazed within one mile of a home or ranch house. In so far as the act of 1893 relates to sheep, it has been superseded by the act of 1903. That act, and that alone, is the only one under which the plaintiff can recover. (26 Am. & Eng. Ency. Law, 2d ed. 730, 731, 734, and authorities there cited.) The attorney's fees allowed by the court, therefore, were beyond its power and illegal and void. The testimony in this case as to damages is conflicting, but there is no conflict as to the amount of damages, and we think it clearly appears that the damages granted are excessive and unjust.

II. Under the rule laid down in the case of *Chandler* v. *Ditch Co.*, 28 Nev. 167, that judgment is clearly erroneous. The court in that case, in speaking of the proper measure of damages, says: "From an examination of many authorities we are convinced that a just and reasonable rule for the measure of damages for the loss of growing crops in cases like the one before this court, where it appears that the crops have been entirely destroyed, or nearly so, and where there appears to be a reasonable certainty that they would have matured but for the wrongful act of the defendant, would be to allow the plaintiffs the probable yield when matured and ready for market, and deducting therefrom the estimated expense of producing, harvesting, and marketing them, and also deducting the value of any portion of the crops that may have been saved." Under the rule just cited it was error for the court to permit witness Flanigan to testify "that the land would support three or four hundred cattle," and the court

erred in admitting all that class of testimony over the defendant's objection.   The testimony complained of might have become admissible if plaintiff had shown what the land usually produced and what it did produce in the year 1906, and the difference would have been a fair measure of damages.

*Cheney, Massey & Price*, for Respondents:

I.   As to the amount of damage sustained we refer the court respectfully to the testimony of J. D. Flanigan, P. L. Flanigan, and J. A. McDonald.   Their testimony will support just what the court found as damages.   The respondent asked in the complaint for a thousand dollars damages for this trespass.   The court found, under the testimony, that the grazing and herding of the sheep during the period indicated damaged the plaintiff the amount of the judgment. The main contention made by counsel in the trial court, and we assume the main contention made in this court, is to the effect that the court had no power or authority, under the law, to award attorney's fees in this action.   This contention is based upon the theory that that certain act entitled "An act in relation to herding, grazing and driving sheep" (Stats. 1903, 47, 48) repealed the act of 1893 (Comp. Laws, 780–783) by implication.   This matter was threshed out by counsel twice in the district court—the first time in the argument on the merits, and the second time in the argument upon the motion for a new trial.   We concede that if the act of 1903 repeals the act of 1893, then perhaps counsel's contention is tenable.   It is a general principle of the law announced by this and all courts in the Union that repeals by implication are not favored and are only held in cases of irreconcilable repugnancy between the later and the former acts, and where that repugnancy is such that the two acts cannot stand together.   (*Estate of Walley*, 11 Nev. 260; *State v. Donnelly*, 20 Nev. 214.)   It is a general rule of construction that whether a new act repeals an existing statute is a question of legislative intention, and it must appear that the legislature intended to abrogate the earlier statute or no repeal will result.   (*U. S. v. Claflin*, 97 U. S. 546; *Water Works Company v. Burkhart*, 41 Ind. 364; *Pacific Railroad Company v. Cass County*, 53 Mo. 17.)

II.   It is a further general rule of law that, in order that one statute shall repeal another by implication, it is necessary that the purposes and objects of the two statutes shall be the same; they must both relate to the same subject and have the same object or purpose.   And where the object to be accomplished by an act is stated and it differs in purpose from a prior act no repeal will be entertained.   (*U. S.* v.. *Claflin, supra; Egan* v. *City of Rochester*, 68 Hun, 331; *Baca* v. *The Board of Commissioners*, 62 Pac. 979; *State* v. *Morrow*, 26 Mo. 131.)   So that the reënactment of certain provisions of an act in a subsequent act, providing a wholly different scheme, will not by implication work a repeal of the provisions in the first act.   (*Powers* v. *Shepard*, 48 N. Y. 540.) The acts must be so clearly repugnant that they cannot stand together, and to such an extent as to imply a negative, and the repugnancy so plain as to be irreconcilable.   (*Marlot* v. *Lawrence*, 1 Blatchf. 608; *Bruce* v. *Schuyler*, 46 Am. Dec. 447; *Fourequeran* v. *Donnally*, 7 W. Va. 14; *Albert* v. *Twohig*, 53 N. W. 582; *McLoughlin* v. *Hoover*, 1 Or. 31; *Walker* v. *State*, 32 Am. Rep. 595.)

III.   The act of 1903 gives a new remedy by the authorization of seizure of the sheep as trespassers, and is without negative words as to the remedy provided for in the act of 1903, authorizing attachment and lien upon the sheep.   The statute giving a new remedy does not take away a remedy previously existing.   (*Racho* v. *Carter*, 24 S. W. 1035; *State* v. *Martin*, 68 Va. 93; *Fisher* v. *Baldrich*, 19 S. W.   227.) Under the rule just stated an additional remedy is given, in the case of trespassing sheep, to that given under the act of 1903, and in the absence of a repealing clause the remedies must be considered as cumulative and as not repealing. Why should the legislature give a right of attachment with attorney's fees in an act for trespassing horses or cattle under the act of 1893, and refuse the attorney's fee and the right of attachment for trespassing sheep under the act of 1903?   Why did the legislature, in the act of 1903, omit any repealing clause, general or special in its nature, when an examination of nearly all legislation passed shows that the general clause is almost invariably inserted?

IV.   Under the rule announced, supported by abundant authority, how can it be said that the act of 1903 is contrary to the act of 1893?  And though it covers some, or even all, of the cases provided for by the former, it gives simply a cumulative remedy.  The two acts, by fair and reasonable construction, may be enforced and made to operate in harmony.  Both acts are presumed to have been passed with deliberation.  Both are remedial.  The later act gives simply an additional remedy and additional damages for second trespass.  The first act gives a remedy with the further remedy of attorney's fee and writ of attachment, or a lien upon the particular sheep or stock committing the trespass.  There is nothing inconsistent, nothing irreconcilable, and nothing to indicate that the legislature intended to restrict or limit the remedy in cases of trespassing sheep.  On the contrary it appears that the legislature intended to extend the remedy.  Remedial statutes should be construed liberally.  Statutes, affirmative of a right and prescribing other than usual remedies for enforcement, not negativing preëxisting remedies, are in their nature merely cumulative and not exclusive.  (*Chandler* v. *Hanna*, 73 Ala. 390; *Dickenson* v. *Van Wormer*, 39 Mich. 141.)

By the Court, Talbot, C. J.:

In the complaint it is alleged that plaintiff is the owner of certain subdivisions of land aggregating four hundred and forty acres and consisting in part of what is commonly known as the Cottonwood Ranch in Washoe County, and also the owner of eighty acres at another place; that on or about the 24th day of February, 1906, and thereafter to the time of the making of the complaint, which was verified on March 7, 1906, the defendants wrongfully and unlawfully caused to be herded and grazed about five thousand head of sheep upon this land without the consent of the plaintiff, by reason whereof the grasses, herbage, and browse growing thereon were eaten up and destroyed and tramped out so as to render the land valueless for grazing purposes during the year 1906 and to the plaintiff's damage in the sum of $1,000.  These and other allegations of the complaint were denied.  After

the trial, which commenced on the 28th day of May, 1906, judgment was rendered in favor of the plaintiff for $600 damages and for an attorney's fee and costs, and declaring these amounts to be a lien upon the live stock or sheep described in the complaint.

From the judgment and an order denying a motion for new trial the defendants have appealed. On their behalf it is claimed that the damages are excessive; that the court improperly made the amount of the judgment a lien upon the sheep when the complaint did not allege or ask for anything by way of lien; that an attorney's fee was improperly allowed; that the act of 1893 (Stats. 1893, p. 30, c. 31), providing for such a fee in cases where the plaintiff recovers damages for live stock herded or grazed upon his lands and for a lien on the live stock in such actions, has been superseded and repealed by the act of 1903 (Stats. 1903, p. 47, c. 28), regarding the herding of sheep, which does not provide for any such fee or lien, and that the provision directing the recovery of a fee in the former act is unconstitutional and void.

The contention of the appellant that the damages are excessive seems to be well taken. For the plaintiff there was testimony to the effect that one acre of the land would have supported one cow or steer for the month of March if the feed had not been destroyed by the sheep, and that the price of pasturing cattle on inclosed lands was one dollar and fifty cents a head per month. If this be granted, still the evidence does not warrant so large an amount of damages as was allowed. It is clear from uncontradicted testimony that a large portion of the four hundred and forty acres designated as constituting in part the Cottonwood Ranch was fenced, and that the sheep did not go upon any of the land within the inclosure nor to the south of it, but only upon outside lands below, or northerly or northwesterly from the fields. The number of acres of this outside and lower land upon which the sheep trespassed is not definitely shown, nor is it required or expected to be, but the inference from the evidence is that they crossed and grazed upon the greater part of eight forties. They were also upon one forty of the separate eighty acres.

The testimony indicates that the two bands of sheep of about two thousand each belonging to the defendants crossed the lands below the ranch belonging to the plaintiff about the 23d of February, camped there over night, one band passing on three or four miles the next day, and that the other band camped for about a week from a quarter to a half mile north of the fence, and then moved on and camped for another week about a mile and a half south of the house, although this is not shown to have been upon the lands of the plaintiff, but apparently they grazed upon the plaintiff's lands and the public domain adjacent during that period; that the grass was starting, and that it was storming during that time; that the feed consisting of bunch and buffalo grass, weeds, and sagebrush would not be destroyed so it would not appear again by being fed over by the sheep, and that it would grow again if there were storms and moisture. A witness stated that the band which remained was delayed by the storm. It was also shown by witnesses who had been placed upon the stand by the plaintiff that the plaintiff's cattle had grazed upon these lands in March, and that the plaintiff's sheep had lambed and fed there in April, and by one of the plaintiff's leading witnesses it was stated that the storms continued late that spring, that the feed had not dried up, and was as good as usual at the time of the trial—ninety days after the trespass. Under these circumstances and especially considering the fact that the defendants' sheep were upon the lands so early in the year, even for grass, the allegation in the complaint that the feed was destroyed for that year, or even for the whole month of March as contended, is not supported by the evidence. Plaintiff introduced testimony on the trial claiming it had sustained special damages by reason of being without hay for its cattle and having extra need for any feed on these lands, but there is no allegation in the complaint to support any such special damage.

Section 1 of the act of February 18, 1893 (Stats. 1893, p. 30, c. 31; Comp. Laws, secs. 780 to 783, inclusive), which is claimed by appellants to have been superseded and repealed and to be unconstitutional in certain respects, provides that it shall be unlawful for any person to herd or

graze live stock upon the lands of another without the consent of the owner.

Section 2 provides: "The live stock which is herded or grazed upon the lands of another, contrary to the provisions of the first section of this act, shall be liable for all damages done by said live stock while being unlawfully herded or grazed on the lands of another, as aforesaid, together with costs of suit and reasonable counsel fees, to be fixed by the court trying an action therefor, and said live stock may be seized and held by writ of attachment issued in the same manner provided by the general laws of the State of Nevada, as security for the payment of any judgment which may be recovered by the owner or owners of said lands for damages incurred by reason of a violation of any of the provisions of this act, and the claim and lien of a judgment or attachment in such an action shall be superior to any claim or demand which arose subsequent to the commencement of said action."

Section 4 provides: "An act entitled 'An act to prevent trespass upon real estate by live stock, and other matters relating thereto,' approved March 15, 1889, is hereby repealed."

Section 1 of the later act (Stats. 1903, p. 47, c. 28) provides: "It is not lawful for any person owning or having charge of sheep, to herd the same, or permit them to be herded, on the land or possessory claims of other persons, or to herd the same or permit them to graze within one mile of the *bona fide* home or *bona fide* ranch house; *provided*, that nothing in this act shall be so construed as to prevent sheep being driven along any public highway, or as near thereto, as may be necessary therefor; *provided, further*, that the word highway as used herein shall be so construed as to permit the driving of sheep herded close together, steadily, quickly, and continuously by the most direct passable route from one range to another, but in no case shall this last provision be construed so as to conflict with the former provisions of this section; *provided*, that nothing in this act shall prevent the owner from herding or grazing on his own land."

Section 2 makes the owner or agent of the owner of the sheep violating its provisions liable to the parties injured for damages. The act of 1903 contains no repealing clause and no reference to the former act, and makes no provision

for an attorney's fee or lien. Under these circumstances it cannot be held to repeal the former. Repeals by implication are not favored, and there is nothing to suggest that any repeal was intended. The act of 1903 covers new and additional matter by making it unlawful to herd or permit sheep to graze within one mile of a *bona fide* home or ranch house regardless of the ownership of the land, while the former act makes it unlawful to herd or graze live stock upon the lands of other persons, and provides for damages, attorney's fees, and a lien against parties infringing its provisions whether within one mile of a home or a ranch house, or more distant.

The complaint and the evidence bring this action within the act of 1883 aimed against herding live stock upon the lands of another, and it does not appear that the plaintiff sought by its allegation or proof to bring the case within the statute of 1903. We conclude that the act of 1893, including its provisions in relation to damages, attorney's fees and liens, has not been repealed. If the plaintiff could not proceed under that act it and other owners could not recover damages caused by the herding of sheep on lands more than one mile from a home or ranch house as they would be limited to this distance by the act of 1903. The act of 1893 being in force, and the complaint asking for general relief and defendant being in court, the amount of the judgment was properly found to be a lien on the sheep.

Objection was made in the trial court and embodied in the specifications of error that there is no authority in law to award attorney's fees in this case. It was claimed there that the provision for such a fee had been repealed, and opposing counsel have filed briefs in this court regarding the constitutionality of the statute providing for such a fee. We are not aware of any decision regarding the validity of a similar statute. Concerning the constitutionality of acts in different states providing for attorneys' fees, the greatest diversity of opinion prevails among the courts, a number of which have divided or reversed themselves regarding this question. As bearing by analogy and elucidating the fundamental principles which ought to govern the validity of our enactment, it is instructive to consider some of these cases.

In *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280, it

was held that a statute allowing an attorney's fee in actions to foreclose mechanics' liens was not unconstitutional. There was an extended dissenting opinion.

In *Helena Co.* v. *Wells*, 16 Mont. 65, 40 Pac. 78, it was said that, without expressing any view as to how the court would consider the question were it a new one, they were of the opinion that it should be regarded as *stare decisis.*

In *Title Guarantee Co.* v. *Wrenn*, 35 Or. 70, 56 Pac. 271, 76 Am. St. Rep. 454, it was said: "It will be observed that the attorney's fees provided for in the act are not fixed and determined nor imposed strictly as a penalty, but rather in the nature of costs, for which the amount is to be determined by the court, and is therefore in our opinion not obnoxious to the Constitution. See *Griffith* v. *Maxwell*, 19 Wash. 614, 54 Pac. 35; *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 330, 30 Pac. 280; *Jewell* v. *McKay*, 82 Cal. 144, 152, 23 Pac. 139; *Helena Supply Co.* v. *Wells*, 16 Mont. 65, 69, 40 Pac. 78."

In *Griffith* v. *Maxwell*, 20 Wash. 412, 55 Pac. 571, the court said: "It is stated in the argument that the learned trial court based its decision upon the case of *Jolliffe* v. *Brown*, 14 Wash. 156, 44 Pac. 149, 53 Am. St. Rep. 868, in which it was held that the provision for an attorney's fee in an act of the legislature there considered could not be sustained, as it was contrary to the spirit of the Constitution of the state." But that case was distinguished from cases like the one now under consideration in *Ivall* v. *Willis*, 17 Wash. 645, 50 Pac. 467, which was a lien case, and in which the provision for an attorney's fee was held valid by this court. In the opinion in that case the court said: "'While it is true there is some conflict of authority upon the validity of such a statute, we think the later authorities have one trend; and that is to maintain such a provision in statutes similar to our lien laws.' Such provisions have been upheld by the courts of California with great unanimity, and the same rule obtains in Montana. (*Hicks* v. *Murray*, 43 Cal. 521; *Quale* v. *Moon*, 48 Cal. 478; *Rapp* v. *Spring Valley Gold Co.*, 74 Cal. 532, 16 Pac. 325; *McIntyre* v. *Trautner*, 78 Cal. 449, 21 Pac. 15; *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 30 Pac. 280.)"

But in the latest California decision on the subject which has come to our notice (*Builders' Supply Co.* v. *O'Connor*, 88 Pac. 982), the supreme court of the state, after reviewing a number of cases, held that a provision allowing an attorney's fee to the successful claimant in an action to foreclose a mechanic's lien was unconstitutional. A similar view was taken in *Davidson* v. *Jennings*, 27 Colo. 187, 60 Pac. 354, 48 L. R. A. 340, 83 Am. St. Rep. 49; *Brubaker* v. *Bennett*, 19 Utah, 408, 57 Pac. 170.

In *Openshaw* v. *Halpin*, 24 Utah, 430, 68 Pac. 138, 91 Am. St. Rep. 796, a statute providing that a mortgagee failing to cancel a mortgage should be liable for an attorney's fee was held to be void, and in *Railroad Co.* v. *Moss*, 60 Miss. 641, an act providing that whenever an appeal was taken from the judgment of any court in an action for damages brought by a citizen of the state against a corporation a reasonable attorney's fee should be assessed by the court was held to be so discriminating in its nature as to appear manifestly unconstitutional.

In *Chair Co.* v. *Runnels*, 77 Mich. 104, 43 N. W. 1006, an act directing judgment for an attorney's fee on the foreclosure of liens on logs was declared invalid; but in *Ivall* v. *Willis*, 17 Wash. 645, 50 Pac. 468, a similar act was held not to be unconstitutional in any sense, but permissible upon the same theory that costs are allowed.

In *Durkee* v. *City of Janesville*, 28 Wis. 464, 9 Am. Rep. 500, the provisions in the charter that no costs should be recovered against the city in an action to set aside a tax assessment or to prevent the collection of taxes was held to be void. In *Williams* v. *Sapieha* (Tex. Civ. App.) 59 S. W. 947, a Texas statute requiring the appointment of an attorney for a nonresident cited by publication who does not appear and the payment of a reasonable compensation to be taxed as costs is declared to be valid.

In *Hocking Valley Coal Co.* v. *Rosser*, 53 Ohio St. 12, 41 N. E. 263, 29 L. R. A. 387, the court held invalid an act providing that if the plaintiff in any action for wages recover the sum claimed by him in the bill of particulars an attorney's fee should be included as costs. But in *Vogel* v. *Pekoc*,

157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491, a statute was upheld which directed that whenever a mechanic, artisan, miner, laborer, servant, or employee should recover for wages and had made demand in writing it should be the duty of the court to allow the plaintiff a reasonable attorney's fee.

In the opinion of the Supreme Court of the United States in *Railway Co.* v. *Ellis*, hereinafter cited, it is stated that statutes have been sustained giving special protection to the claims of laborers and mechanics.

In *R. R. Co.* v. *Dey*, 82 Iowa, 312, 48 N. W. 98, 12 L. R. A. 436, 31 Am. St. Rep. 477, a statute authorizing attorneys' fees upon recovery against a railroad company for violating an act regulating rates was held not to infringe the constitutional provision as to equality.

In *Missouri Pacific Ry. Co.* v. *Merrill*, 40 Kan. 409, 19 Pac. 793, an attorney's fee was allowed in a suit for damages by fire caused by the railroad.

Although there was formerly some conflict and one or two cases taking an emphatic, opposite view (*Williamson* v. *Liverpool Co.* [C. C.] 105 Fed. 31; *Phenix Ins. Co.* v. *Schwartz*, 115 Ga. 113, 41 S. E. 240, 57 L. R. A. 752, 90 Am. St. Rep. 98), it seems to be now well settled that statutes providing for attorney's fees upon recovery upon life and fire insurance policies are valid and enforceable. (*British American Co.* v. *Bradford*, 60 Kan. 82, 55 Pac. 335; *Union Central Life Ins. Co.* v. *Chowning*, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504; *Merchants' Life Assn. Co.* v. *Yoakum*, 98 Fed. 251, 39 C. C. A. 56; *Iowa Life Ins. Co.* v. *Lewis*, 187 U. S. 355, 23 Sup. Ct. 126, 47 L. Ed. 204; *Mutual Life Co.* v. *Mettler*, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922; *Farmers' & Merchants' Ins. Co.* v. *Dobney*, 189 U. S. 302, 23 Sup. Ct. 565, 47 L. Ed. 821.) These were based upon the theory that the policy holders or beneficiaries are entitled to special protection under the police power.

Enactments authorizing the recovery of attorneys' fees in suits for damages for stock killed by railroads have been held valid in some states and unconstitutional in others. (*Railway Co.* v. *Duggan*, 109 Ill. 537, 50 Am. Rep. 619; *Jolliffe* v. *Brown*, 14 Wash. 155, 44 Pac. 149, 53 Am. St. Rep. 868; *Laf-*

*ferty* v. *Railway Co.*, 71 Mich. 35, 38 N. W. 660; *R. R. Co.* v. *Morris*, 65 Ala. 193.)

In *Dow* v. *Beidelman*, 49 Ark. 455, 5 S. W. 718, the court said: "And such laws have been held to fall within the police power of the state.  Here the damages are given by way of punishment to the company for its negligence in failing to build the fence.  (*Thorpe* v. *R. & B. R. Co.*, 27 Vt. 140, 62 Am. Dec. 625; *Mo. Pac. Ry. Co.* v. *Humes*, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *Johnson* v. *Chicago & R. Co.*, 29 Minn. 425, 13 N. W. 673.)  An attorney's fee may be included as a part of the penalty imposed for non-compliance with the duty imposed without rendering the statute obnoxious to the objection of being partial and unequal legislation.  (*P. D. & E. Ry. Co.* v. *Duggan*, 109 Ill. 537, 50 Am. Rep. 619; *K. P. Ry. Co.* v. *Yanz*, 16 Kan. 583; *Missouri Pac. Ry. Co.* v. *Abney*, 30 Kan. 41, 1 Pac. 385.)"

In *Railroad* v. *Crider*, 91 Tenn. 504, 19 S. W. 618, it was stated: "We have been cited to two cases which are supposed to support the contention of the learned counsel that the imposition of the reasonable fee of an attorney is invalid, as partial legislation. ·(*Railroad* v. *Williams*, 49 Ark. 492, 5 S. W. 883; *Wilder* v. *Railroad*, 70 Mich. 382, 38 N. W. 289.) * * * The view we have taken, that such added liability was but the imposition of additional damages and was a valid exercise of the police power, was never considered.  Acts similar to our own in respect to this feature have been sustained by reasoning more satisfactory to us.  (*Railroad* v. *Duggan*, 109 Ill. 537, 50 Am. Rep. 619; *Railroad* v. *Mower*, 16 Kan. 573; *Railroad* v. *Shirley*, 20 Kan. 660; *Railroad* v. *Abney*, 30 Kan. 41, 1 Pac. 385.)"

In order to conform to the decision of the Supreme Court of the United States in *Railway* v. *Ellis*, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, the Supreme Court of Missouri in *Paddock* v. *Mo. Pac. Ry. Co.*, 155 Mo. 537, 56 S. W. 453, reversed its former holding in *Perkins* v. *R. R.*, 103 Mo. 52, 15 S. W. 320, 11 L. R. A. 426, wherein they had followed the rule in Illinois instead of the opposite one in Michigan.

A Texas statute which had been sustained by the courts of that state, and which provided that any person having

a valid claim, not exceeding fifty dollars, for personal serv-
ices rendered or labor done or for damages or for over-
charges on freight, or claims for stock killed or injured by
the train of any railway company, and that if such claim
were not paid within thirty days after presentation the
claimant should be entitled to recover the amount of the
claim and all costs of suit, and a reasonable attorney's fee
not to exceed ten dollars, was held by the Supreme Court of
the United States in *Gulf, C. & S. F. Ry.* v. *Ellis*, 165 U. S.
150, 17 Sup. Ct. 255, 41 L. Ed. 666, to deny the equal pro-
tection of the laws guaranteed by the fourteenth amendment.
The Chief Justice and two of the justices dissented. Strip-
ping the case of technical distinctions and looking to the
facts and result Ellis, the owner of the colt killed by the
railroad company, was not allowed an attorney's fee of ten
dollars upon his recovery of damages for the killing of the
colt by the railroad, on the theory that the allowance of such
a fee would deny to the company the equal protection of the
laws. But in *R. R.* v. *Matthews*, 174 U. S. 96, 19 Sup. Ct.
609, 43 L. Ed. 909, it was held that under the Kansas statute
a party obtaining judgment for damage by fire caused by a
railroad company could recover an attorney's fee, the same
justice writing the decision in both cases, and four of the
nine justices joining in an elaborate dissenting opinion.
The conclusion of the court was based on the theory that
the legislation was within the police power of the state, and
partly that under the conditions prevailing there fires set by
the negligence of the railroad companies to the grass on the
prairies might spread for long distances and do great damage.
In the decision it was said: "Many cases have been before
this court involving the power of state legislatures to impose
special duties or liabilities upon individuals and corporations,
or classes of them, and while the principles of separation
between those cases which have been adjudged to be within
the power of the legislature and those beyond its power are
not difficult of comprehension or statement, yet their appli-
cation often becomes very troublesome, especially when a case
is near to the dividing line. * * * The equal protection of
the law which is guaranteed by the fourteenth amendment

does not forbid classification. That has been asserted in the strongest language. (*Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.) In that case, after in general terms declaring that the fourteenth amendment designed to secure the equal protection of the laws, the court added (pages 31 and 32 of 113 U. S., pages 359, 360 of 5 Sup. Ct. [28 L. Ed. 923]) : 'But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations, to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation, which in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.' This declaration has, in various language, been often repeated, and the power of classification upheld whenever such classification proceeds upon any difference which has a reasonable relation to the object sought to be accomplished. * * *
It is also a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature

was one in the enactment of which it has transcended its power. On the other hand, it is also true that the equal protection guaranteed by the Constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated. * * * It is the essence of a classification that upon the class are cast duties and burdens different from those resting upon the general public."

It is also well settled in this state that the legislature may make laws which apply only to certain classes if there is a reasonable basis for the classification. Citations of many cases indicating diversity of opinion regarding the validity of enactments providing for attorney's fees may be found in the cases we have cited, and in *Louisville Safety Vault & Trust Co.* v. *Louisville & N. R. Co.*, 14 L. R. A. 586, 9 Fed. Stat. Ann. 554, and *Farmers' & Merchants' Ins. Co.* v. *Dobney*, 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 821.

It has very generally been held and may be conceded that the legislature may make laws regarding matters within the police power and provide penalties for their enforcement, and that instead of providing for a fine to be paid to the state may enact that extra damages or an attorney's fee in the nature of a penalty may be recovered by the injured party. (*Mo. Pac. Ry. Co.* v. *Humes*, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463.) In *Wallace* v. *Mayor and City of Reno*, 27 Nev. 71, 103 Am. St. Rep. 747, and in *Ex parte Boyce*, 27 Nev. 299, we held that the people, and through them the legislature, had supreme power in all matters of government, where not restricted by constitutional limitations; and, adopting the language of the Supreme Court of the United States, we said: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals." Notwithstanding any conflict in the decisions we have cited relating more directly to attorney's fees, it is apparent that our statute providing for the recovery of such fees by the

owner of land upon which sheep are herded may be prop-
erly considered as not unconstitutional if the herding and
grazing of sheep and live stock on the ranges are of great
importance and essential to the welfare of the state.

Upon the coming of the white man our hills and valleys
were covered with large quantities of feed suitable for sus-
taining and fattening domestic animals. To this day by far
the greater part of the area of the state is valuable only
for the grazing of live stock. There are large quantities of
weeds and browse which cattle do not eat, but which sheep
prefer. While the industries of the state were in their
infancy large bands of cattle were driven here from Texas
and other places and turned on the ranges, where they
thrived upon the public domain, and during earlier years
had sufficient forage in the open to sustain them summer
and winter, and they increased and consumed the feed which
became less plentiful. Homesteaders and settlers grew more
numerous, and gradually came to occupy the more desirable
portions of the land where water could be obtained for irri-
gation. Later than cattle sheep were brought into the state
in large numbers and increased, until the raising of wool
and the production of mutton has assumed large dimensions.
It is the custom to herd sheep in bands of 2,000 or more,
some men having one or a few bands and others many bands;
some not being residents or citizens and owning little or no
real estate and others having ranches and large amounts of
land, but all dependent upon the ranges. As the number of
settlers increased both the cattle and sheep became more
numerous, the grasses were eaten down or tramped out, and
the feed became more scarce and conflicts arose. Horses and
cattle were and still are allowed to roam at will upon the public
domain, and the owners of unfenced land cannot recover for the
grasses they eat or destroy. We have no law requiring that
they be kept within inclosures. The growers of live stock
have the benefit of the forage which makes fat and in turn
brings wealth. Naturally the owners of both cattle and
sheep desire to have their animals thrive upon the best feed.
The man with a small farm, work horses, and a few cows is
partly dependent upon the range adjacent to his ranch. One

or more bands of sheep closely herded, eating the grass to the ground, and tramping with their sharp feet could soon destroy or greatly injure the feed near the ranches and convenient for horses and cattle. Sometimes the sheep were herded almost to the door and fields of the rancher, and when the feed had been eaten there it was easy for them to move on to other parts of the ranges and secure new forage which the rancher could not so well do with his cattle and horses. Many of the sheep are grazed hundreds of miles between their summer and winter ranges. Quarrels and assaults arose resulting in the killing of some of the stockmen, and necessitating expensive criminal investigations and trials. Not only did the homesteader and settler and the owner of sheep and others in whatever branch of stock growing engaged, who had open lands, need protection, but the increase of cattle, homes, and taxable property was being retarded. Under these circumstances it would seem that the raising of cattle and sheep and the production of beef and mutton for the table and of wool for clothing are of such great importance not only to those directly engaged in these profitable and extensive industries, but to the public in general, and that their protection and encouragement are so desirable and so essential to the welfare of the state as to justify their regulation by the legislature.

The terms of the first statute, passed in 1889, against trespass by sheep and which was repealed by the one of 1893 under which this action was brought, as well as the one of of 1903, indicate that they were enacted as police regulations. The former act made it unlawful for any person to herd or knowingly graze any live stock upon the lands of another without the consent of the owner, but required the boundaries of the land to be so marked that its extent or limits could be readily seen and easily traced, and that all taxes thereon had been paid, and declared that any person violating its provisions should be guilty of a misdemeanor, and on conviction be fined not to exceed five hundred dollars, and also provided that live stock herded or knowingly grazed on the lands of another contrary to the provisions of the act should be liable for double damages, together with

the costs of suit and reasonable counsel fees, and that the judgment should be a superior lien on the live stock.

The Supreme Court of the United States, affirming the decisions of the Idaho courts, held valid an act of that state making it unlawful for any person owning or having charge of sheep to herd the same on the land or possessory claims of other persons, or to permit them to graze within two miles of a dwelling house of the owner of such claim, and providing for the recovery of damages. It was said that the police power of the state is not confined to the suppression of what is offensive, disorderly, or unsanitary, but embraces regulations designed to promote the public convenience or the general prosperity. The court arrived at the conclusion that the owner of the sheep was not deprived of his property without due process of law, and that no arbitrary or unreasonable discrimination against the sheep industry was made by that statute. (*Bacon* v. *Walker*, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499.)

In *C., B. & Q. Ry. Co.* v. *Illinois*, 200 U. S. 561, 26 Sup. Ct. 347, 50 L. Ed. 596, the Supreme Court of the United States quoted with approval the statement of the Supreme Court of Illinois that "where lands are valuable for cultivation, and the country depends so much upon agriculture, the public welfare demands that the land shall be drained, and that, in the absence of any constitutional provision in relation to such laws, they have been sustained upon high authority as the exercise of the police power." We do not wish to be understood as determining the validity of statutes providing for attorneys' fees in any kind of cases except the one before us, nor as adopting any of the decisions cited further than they establish that such fees as penalties may be imposed when the statute is within the police power, and the opinions of the Idaho courts and of the Supreme Court of the United States holding that the Idaho statute making damages recoverable for herding sheep on the public domain within two miles of a dwelling house is within that power.

If the principles promulgated in these cases are sound, as we believe and as generally conceded, it follows that the provision in our statute for an attorney's fee in favor of the

party recovering damages is a proper police regulation tending to prevent trespass, tortious acts, and breaches of the peace, to encourage settlement and home building, to protect important industries, to increase population and taxable property, to decrease crime and the expense of criminal trials, and consequently to promote the welfare of the state, and therefore that the statute was properly enacted by the legislature and is not in conflict with the fourteenth amendment nor with section 21 of article 4, or any other provision of the State Constitution. If the question were uncertain, doubts regarding the validity of the act would be resolved in its favor as often held by this and other courts.

If within fifteen days from the publication of this decision the respondent files its consent in this court that the judgment be modified so as to reduce the amount of damages to be recovered from $600 to $400, the district court will be directed to modify the judgment accordingly, and, as so modified, it will stand affirmed.

If such consent is not so filed, the case will be remanded for a new trial.