LYLE COOK, Appellant, v. MAREMONT–HOLLAND CO., a Nevada Corporation, BRIGHT–HOLLAND CO., a Nevada Corporation, NEMEROFF–HOLLAND Co., a Nevada Corporation, Doing Business as HOLLAND LIVESTOCK RANCH, a Partnership, Respondents.

No. 4173

September 22, 1959                               344 P.2d 198

*Ernest S. Brown,* of Reno, for Appellant.

*Grubic, Drendel & Bradley*, of Reno, for Respondents.

# OPINION

By the Court, BADT, J. :

Appellant Lyle Cook, defendant below, is referred to as Cook. Holland Livestock Ranch, a copartnership and the corporations named as Maremont-Holland Co., Bright-Holland Co., and Nemeroff-Holland Co., respondents herein and plaintiffs below, are referred to as Holland.

Holland sued Cook under our old trespass statute, now NRS 568.300, for unlawful trespass by Cook's herding of his sheep upon Holland's land in Washoe County, particularly described in the complaint, and for an injunction against the threatened continuing trespass. The statute involved provides simply : "It shall be unlawful for any person to herd or graze any livestock upon the lands of another without having first obtained the consent of the owner of the lands so to do." Section 2 fixes liability for damages done by such trespassing livestock. The complaint alleges the trespass to have occurred in the spring and fall of 1956 and the spring of 1957 by Cook's herding on Holland's lands of 2,000 head of sheep. The complaint alleges Holland's demand that Cook desist from such trespassing, Cook's refusal, and his threat to continue, the irreparable damage that will result, as well as the resulting necessity for a multiplicity of suits, the inadequacy of continued and repeated suits for damages, and the lack of an adequate remedy at law, otherwise than through an injunction. The damage already suffered is asserted in detail at the acreage value of the feed alleged to have been consumed on Holland's land by Cook's sheep, the loss of weight of a fixed number of Holland's cattle "sheeped off" Holland's land, the expense of employing additional riders at a fixed amount per day for a fixed period to gather Holland's livestock to return them to their range, and the cost of hauling a fixed amount of hay at a fixed price to the property known as Stone Corral to feed Holland's

saddle horses because the pasture where the caviata[1] was usually held had been fed off by the sheep. The aggregate of the damages thus prayed for was $23,336. The amount of the proved damage as found by the court and fixed in the judgment was $646.

Cook's answer denied the trespass and denied damage, and set up the following affirmative defenses:

1. It is first asserted that the court has no jurisdiction over the subject matter of the action or to grant the relief demanded, for the reason that Holland's land, upon which Cook's sheep are alleged to have been herded, and certain lands belonging to Cook (Holland's land as well as Cook's land being unfenced) were all situate within federal grazing district C2N, Bureau of Land Management, Department of Interior, and that both Cook and Holland had been granted a license or permit to graze within this area—Cook with his sheep and Holland with his cattle; that the public domain in this area adjoins and surrounds Holland's land as described in his complaint; "that defendant's sheep could not graze in and upon the public domain surrounding defendant's land without using the creek and springs therein *and upon plaintiff's lands*" (emphasis supplied); that Holland in the exercise of his license is grazing cattle upon the public domain and upon Cook's unfenced private lands and water adjacent to said public domain; "That the Bureau of Land Management in granting plaintiff and defendant's grazing licenses has jointly considered dependency by use of plaintiff and defendant's lands and water by the use of the federal range for grazing and the relative dependency by use of each of the base properties have been proportionate to the annual use actually and properly made of the federal range under the plaintiff's and defendant's respective grazing licenses"; that issuance

---

[1]Probably a corruption of the Spanish "cabalgada" ("cabalgata"), a cavalcade. Each cowboy had his own "string" of horses. The entire group of these formed the caviata. For other adaptations from the Spanish by western cowboys see note 1 to Gattshall v. Sizemore, 71 Nev. 106, 281 P.2d 400.

of an injunction would be control by the court of Cook's use of water *on and near* plaintiff's lands contrary to the right of control of the public domain by the federal government.

2. Here Cook repeats his allegations of the issuance of licenses or permits to both Cook and Holland for grazing in the same area—Cook with his sheep and Holland with his cattle, and the ownership by both Cook and Holland of unfenced lands within the grazing area, and that the Bureau of Land Management in granting such licenses or permits "has jointly considered dependency by use of plaintiff and defendant's lands and water", etc., as alleged in the first affirmative defense, and that "the defendant's sheep could not be grazed in and upon the public domain surrounding defendant's land without using the creek and springs therein *and upon plaintiff's lands*" (emphasis supplied). It is then alleged that Cook and his predecessors since 1917 have run 2,000 sheep on the public domain involved, both before and after the enactment of the Taylor Grazing Act in 1934, 43 U.S.C.A., sec. 315 et seq., including the springs and creek "crossing plaintiff's land and has a right to the use thereof"; that in order to exercise such rights and water his sheep at Rola Springs and the creek at Stone Corral, he has continuously since 1917 "utilized an easement and right of way over the lands of plaintiff"; that such use "has been continuous and uninterrupted, open and visible, adversely and of definite right"; that he has a vested right of access to the waters at Stone Corral and Rola Springs, and an easement for such right of access. Cook prays that Holland's demand for injunctive relief be denied and that, on the contrary, Holland be restrained from interfering with Cook's exercise of his right to go upon Holland's land with his (Cook's) sheep.

The case was first heard, by the court without a jury, on Holland's motion for a temporary injunction. It was later tried on the merits, to the court without a jury, and the evidence taken at the preliminary hearing was by stipulation made a part of the record of the trial.

The learned district judge signed a written decision in which he incorporated certain findings of fact, and his judgment in favor of Holland for a permanent injunction and damages followed the decision without further findings or conclusions. The district judge said: "From the very first it is and has been apparent to me that a trespass occurred on properties owned by the plaintiffs." This is so clearly demonstrated by the record and by the admissions of the defendant that discussion of the evidence on the point is unnecessary. In the trial court, as here, Cook relied upon Ansolabehere v. LaBorde, 73 Nev. 93, 310 P.2d 842, as to which the district judge, with entire justification remarked: "I cannot believe that there has ever been any idea on the part of our Supreme Court that it should be extended to include the right to use private property without just compensation. Accordingly, I hold that Ansolabehere v. LaBorde does not justify the defendant's trespassing upon the lands of plaintiffs." Attacking this holding as error, Cook's opening brief asserts: "The evidence is without dispute that Lyle Cook in common with plaintiff, has a valid grazing license to graze his sheep upon all the surrounding private lands of plaintiff in C2N grazing district in the area involved in this suit." All that can be said as to this contention is that it is without foundation in law, in anything that may be found in the Taylor Grazing Act or in any statement or inference made by this court in Ansolabehere v. LaBorde. In that case we held that those features of the Nevada 1925 stockwatering act having to do with the control of grazing rights or privileges on the public domain were superseded and rendered ineffective by the Taylor Grazing Act. No language used in the opinion could possibly justify an inference that we held that the Taylor Grazing Act authorized the Bureau of Land Management to grant a license or permit to one man to graze livestock on the privately owned land of another without the latter's consent. See 43 Code of Federal Regulations sec. 161.6(c) p. 60 (Supp.). At the trial Cook produced officials of the Bureau of Land Management (which now, in place of the Secretary of the Interior, administers the provisions of the Taylor

Grazing Act) and apparently sought to elicit from them testimony to the effect that in granting licenses or permits to both Cook and Holland in the same grazing area, recognizing the unfenced lands of each[2] as one of the bases and criteria for the issuance of such licenses, the bureau had licensed each to utilize the unfenced lands of the other. These officials, however, positively and repeatedly asserted that the licenses granted had to do exclusively with the public domain and conveyed no right whatsoever to any licensee to use the private lands of other persons. It could of course not be otherwise.

3. Eventually the range rights in the district were adjudicated. Such adjudication is accomplished by the Bureau of Land Management after a complete determination of the extent of the ownership of base properties by the users of the public domain, their customary use of the public domain, with fixed numbers of livestock over what is known as the base period from 1929 to 1934, and a determination of the available feed on the public domain. Such available feed is measured in animal unit months, referred to as AUM's, being the amount of feed required by one cow (equivalent to the feed required for five sheep) in one month.[3] The adjudication then (in most cases) reduces the rights of the public range users proportionately to the amount of available feed on the public domain. All this was done on unit C2N and Cook vehemently urges that the acceptance of this adjudication was not only an acceptance by Cook of the use of his unfenced lands in the area by Holland's cattle but was an acceptance by Holland of Cook's right to graze

[2]District C2N is what is known as a "land base district." In other words, the permit or license is granted to graze stock on the public domain eight months of the year in consideration of the ownership by the applicant of base properties upon which he can maintain his livestock for the remaining four months. This is in distinction to certain other districts in which the ownership of stockwatering rights may be considered part of the owner's base property.

[3]This is related directly to the number of acres required to support one cow (or five sheep) throughout the year. This varies greatly in different districts. Here it was fixed by the BLM officials at eight to ten acres.

his sheep upon Holland's unfenced land in the area and that Holland was thereby estopped from denying such rights asserted by Cook. As above noted, grazing permits or licenses granted by the Bureau of Land Management were restricted to the use of the public domain. But it should be noted also that Cook throughout the trial and in his contentions here, as well as before the trial court, deliberately and consistently ignored any distinction between the herding of sheep on the unfenced lands of another and the ranging of cattle as free commoners, on the lands of another. The distinction is so clear and has so often been discussed, and the resulting rights and liabilities determined, in numerous decisions by this and other courts as to preclude the necessity for discussion. See Pyramid L. & S. Co. v. Pierce, 30 Nev. discussion. See Pyramid Land & Stock Co. v. Pierce, 30 Nev. 237, 95 P. 210, 215; Sweet v. Ballentine, 8 Idaho 431, 69 P. 995.

4. Cook next contends that the evidence shows that he had acquired a valid easement by prescription to use the waters situate on Holland's privately owned lands and an easement across such lands for access to such waters. The trial court said with reference to this contention: "In this connection there is evidence that defendant or his predecessors have at various times run sheep over and upon certain lands of the plaintiffs since 1917. The mere fact of trespass does not give a right of user unless such is claimed adversely to the owner. That the user was not hostile or 'under a claim of title, exclusive of any right as one's own,' seems most evident when we consider certain portions of the testimony taken at the hearing on the temporary injunction." He then referred to Cook's testimony on the motion for a temporary injunction in which Cook denied any "claim to utilize any of Mr. Holland's land in this area, either under the Taylor Grazing permit or otherwise." When asked if he utilized Holland's unfenced property, he answered: "No, we do not, at least not intentionally." He further testified that he instructed his herder "to

stay off anything that was Holland's land, so far as we could determine." On cross-examination when he was asked, "Q. Mr. Cook, you testified, I believe, that you didn't intend to trespass at all any more on this particular land; is that correct? A. Not any more, or before, no." He further testified, "Q. And you have no particular reason to go on Mr. Holland's land either at Stone Corral or down here, for the purpose of getting water; is that correct? A. That is correct." He then pointed out on the map various other watering places available to him not on Holland's land. It is true that on the trial on the merits he testified to a claim of right and to a continuous user, but there was considerable testimony contra. The trial court held: "Accordingly, I hold that adverse possession has not been proved, that defendant has not gained a prescriptive right of way of plaintiffs' land." Although there is evidence to the contrary, the record amply supports this finding, and this court will not disturb it.

5. Cook urges that any loss to Holland was compensable in damages and that injunctive relief was accordingly not available. The threat of continuing trespass, however, entitled the plaintiff to injunctive relief. Phenix v. Frampton, 29 Nev. 306, 90 P. 2; Thrasher v. Hodge, 86 Mont. 218, 283 P. 219; see 60 A.L.R.2d 314, Annotation—Injunction against trespasses. Especially is this the case where there is a threatened continuing trespass by the herding of sheep on the lands of plaintiff. Defendant testified positively that he would continue his operation, using Cook's land, unless enjoined by the court. Injunctive relief was in order.

6. Appellant asserts that there is no evidence to the effect that he actively and affirmatively herded his sheep or caused his sheep to be herded on Holland's land; that if they went upon his land they did so without being herded thereon and that the trespass was, accordingly, not actionable under the statute. This contention, however, is refuted by the entire record. There can be no

question of the fact that the sheep were herded upon the land.

7. Appellant claims that there was no substantial evidence to support the judgment for $646 damage. The learned trial judge restricted the damages assessed to the employment of additional riders to gather the cattle that had left the land when the sheep were herded upon it, and the hauling of hay to the Stone Corral area for feed of the caviata because the sheep had consumed the feed in the field where the caviata was ordinarily held. The record supports this finding.

The judgment and the order denying the motion for new trial are affirmed with costs. The appeal from the order denying the motion to set aside the preliminary restraining order is dismissed.

MCNAMEE, C. J., and MERRILL, J., concur.